CREDIT EQUIPMENT CORPORATION, a New York Corporation, Plaintiff-Respondent,

v.

Wayne WESTON and Ray F. Coburn, d/b/a Seneca Appliance, Seneca, Missouri, Defendants-Appellants.

No. 7688.

Springfield Court of Appeals.

Missouri.

May 27, 1958.

**494**

———◆———

John D. Kelly, Seneca, for appellants.

Douglas & Douglas, Neosho, for respondent.

McDOWELL, Judge.

This is an action by Credit Equipment Corporation, plaintiff-respondent, against Wayne Weston and Ray F. Coburn, co-partners, d/b/a Seneca Appliance, Seneca, Missouri, to recover on two Trade Acceptance Agreements in the amount of $320.60 each.

The cause was tried in the Circuit Court of Newton County, Missouri, by the court, jury having been waived, and judgment rendered for plaintiff for $320 on each Acceptance Agreement. Defendants appealed.

The issue in the case is whether or not the Trade Acceptances sued on had been paid and the debt discharged by virtue of plaintiff's acceptance of defendants' two checks for the amount due on which payment was stopped.

The parties stipulated that the Trade Acceptance Agreements (described in counts 1 and 2 of plaintiff's petition) were purchased by plaintiff from Carbozite Protective Coatings Company, Inc., on November 1, 1954, in the regular course of business and in good faith, for a consideration of $224.42 each; that at the time of purchase none of the officers or agents of plaintiff knew of any complaint by defendants.

It is stipulated that defendant stopped payment on each check given plaintiff in payment of the Acceptance Agreements.

Plaintiff introduced the Trade Acceptances sued on and the two checks upon which payment was stopped.

Wayne Weston, defendant, testified that a representative of plaintiff-company came to the store of defendants and defendants gave to him three checks for $320.60 each, in payment for the three Trade Acceptances, which defendants had previously given Carbozite Protective Coatings Company. He gave this testimony:

"Q. For what did you give this man the checks? A. In payment of the Trade Acceptance Agreements.

"Q. He was trying to collect this money? A. Yes.

"Q. What was your agreement with him when you gave him the checks? A. The checks were in payment of the Trade Acceptances they were trying to get settled.

"Q. What was his reason for that? A. Because the trade acceptances had been on their books for too long a time, and they were trying to get settled with the Carbozite Company, and because of that he would accept the three checks in payment of the trade acceptances and let us pay them out with them."

Witness testified that plaintiff's agent gave him a long yarn about the deal which had been pending for more than a year and said, "these were written out of the State of New York, and they were not what they wanted and were not as good

to him as the checks". He stated they wanted the checks payable a month apart for each of the Trade Acceptance Agreements, which were so payable. He said "Whether he told me in outright words or not, I don't know, but he gave me that impression that I would receive them back."

He testified the three checks were post dated and that the agent said they would prefer to try to collect the checks rather than the Acceptance Agreements; that when the checks were given, defendants did not intend to stop payment on them but, later, changed their minds and stopped payment. He gave this testimony:

"Q. You don't deny signing Exhibits One and two, which are the Trade Acceptance Agreements? A. No, I signed them.

"Q. You have never paid them? A. Yes, I paid them with the checks.

"Q. But the checks have never been paid? A. No.

"Q. And you stopped payment on the checks? A. Yes."

The evidence is that there were three Trade Acceptance Agreements; that one check was paid. Defendant stated that payment was stopped on the checks because plaintiff failed to carry out his promise. He gave this testimony:

"Q. What was it the Credit Equipment Company promised to do that they did not do? A. They promised to get the Carbozite men down and to do what they agreed to do."

Witness said that at the time the checks were delivered to the agent he asked that the Trade Acceptance Agreements be returned but had made no demand since that time; that at the time of the agreement to give the checks, plaintiff promised he would have the Carbozite Company send a representative to defendants' place of business to show them how to use and sell the stuff they had bought from the Carbozite Company; that this promise was made as a part of the agreement for the issuing of the checks.

Ray Coburn testified that he is one of the partners in the Seneca Appliance and was acquainted with the transactions involved. He stated he was at the store when plaintiff's agent came to collect the Trade Acceptances. He gave this testimony:

"Q. And was there some ensuing conversation about the trade agreements? A. Yes.

"Q. In the conversation, did he make any agreement to, now, what did he agree to do? A. He agreed to send—he agreed if we would give him the checks for those trade notices, which he said were not collectible any more under the New York law because they were more than one year old, well, we said we didn't want to beat him out of the money, but all we wanted was for them to do what they had promised to do, and he said if we would give him the three checks that he would have the people down here in thirty days, and to prepare a list for them to see, which we did, but after we gave him these checks we never heard of him again until we got sued. We paid one check at the time he was there, and that's why we could not stop payment on it. He said it would take thirty days so we gave him our checks.

"Q. He agreed to send people down to do what? A. To show us how to apply our merchandise. There's a certain way it is supposed to be applied. They were to conduct an advertising campaign and see customers.

"Q. Did he specifically tell you then to give him the checks and that they were being accepted as full and complete payment and discharge of the Trade Acceptance Agreements? A. Yes. He said he would send the agreements back to us.

"Q. You said that you did not want to beat anybody out of money. A. I don't. They told us a lie. They said they would return the trade acceptances as soon as the checks were paid."

The witness testified that he stopped payment on the checks and did not intend to go through with the agreement.

In our opinion we will refer to appellants as defendants and to respondent as plaintiff, the position occupied in the lower court.

Defendants' first assignment of error is that "the trial court erred in excluding evidence of a separate agreement, and of an accord and satisfaction, between plaintiff and defendants".

With this contention we do not agree. The trial court permitted defendants to show all the facts pertaining to the execution of the checks sued on. We have set out the testimony as to the agreement relied upon by defendants to defeat the cause of action.

In Rettinghouse v. Krey Packing Co., Mo.App., 200 S.W.2d 584, 586(1), the law is stated:

"The law is well settled that the payee's mere acceptance of his debtor's check will not constitute payment of the debt in the absence of an express agreement to that effect, and that without such agreement or consent, which may be shown from the circumstances and conduct of the parties, the debt is not discharged until the check is in fact paid in due course. Rhodus v. Geatley, 347 Mo. 397, 147 S.W.2d 631; Johnson-Brinkman Commission Co. v. Central Bank of Kansas City, 116 Mo. 558, 22 S.W. 813, 38 Am.St.Rep. 615; Griffin v. Priest, Mo.App., 137 S.W.2d 685; * *"

In G. F. C. Corporation v. Nesser, Mo. Sup., 273 S.W.2d 264, it was contended by defendant that the delivery of checks by the defendant to plaintiff constituted payment of the amounts due. On page 267 of the opinion the court made this statement:

"* * * In Hickerson v. Con Frazier Buick Co., Mo.App., 264 S.W.2d 29, 33 [5, 6], it was said, 'a check is not payment of a debt unless by *express contract* it is so received; * * * there arises no presumption that a creditor takes a check in absolute payment from the mere fact that

he accepts it from his debtor, in fact the presumption is just the contrary; * * * the evidence must *clearly establish* that the seller agreed to accept the check as payment; and the burden is on the debtor to so prove by clear and cogent evidence. Rettinghouse v. Krey Packing Co., Mo. App., 200 S.W.2d 584, 586; Griffin v. Priest, Mo.App., 137 S.W.2d 685; Lewis v. [James] McMahon & Co., 307 Mo. 552, 271 S.W. 779; * * *'"

In the instant case the taking of the checks post dated, to become due on the same date as the Trade Acceptances became due, would not constitute payment unless by express contract they were so received. There arises no presumption that plaintiff took the checks in absolute payment of the Trade Acceptances by the mere fact that it accepted them from the debtors, in fact, the presumption is just to the contrary, and it was incumbent upon defendants to offer evidence establishing an express contract between them and plaintiff to accept the checks as payment. The evidence must clearly establish that plaintiff agreed to accept such checks as payment and the burden is on defendants to prove such express contract by clear and cogent evidence. Defendants wholly failed to establish such express contract. One of the defendants testified that at the time of the giving of the checks, in payment of the Trade Acceptances, plaintiff was to return the Trade Acceptances when the checks were paid. Defendants admit they did not pay the checks but did, in fact, stop payment thereon. We find against defendants on this alleged error.

Defendants' allegation of error under (B) is that "The verdict and judgment are against the evidence, and against the greater weight of the evidence in the case."

There is no merit to this contention. Under the evidence the debt is admitted. Defendants seek to avoid liability on the ground of an express contract to accept checks in full payment and satisfaction of such debt. We have held under the first

allegation of error that defendants failed to meet the burden of proof establishing such defense. Therefore, there is no merit in this contention.

Judgment affirmed.

STONE, P. J., and RUARK, J., concur.