STATE of Missouri, ex rel. NATIONAL INVESTMENT CORP., d/b/a Boaz Apartments, Respondent,

v.

George C. LEACHMAN, Collector of Revenue, St. Louis County, Appellant.

No. 62168.

Supreme Court of Missouri, En Banc.

April 6, 1981.

Jerome Wallach and Richard Bumb, Fenton, for respondent.

Thomas W. Wehrle and Barbara Enneking, Clayton, for appellant.

RENDLEN, Judge.

This appeal, involving construction of the revenue laws, comes to us directly through Art. V, Sec. 3, Missouri Constitution. The question turns on whether Sec. 139.031.1, RSMo 1978,[1] permits a taxpayer to challenge taxes assessed against him by filing written protest *after* payment of the taxes, when, as here, both payment and protest occur prior to January 1, the date of delinquency. The trial court approving such consecution, compelled the Collector of Revenue (Collector) by its writ of mandamus to impound that portion of taxes disputed by the taxpayer, National Investment Development Corp. (National), though National filed its protest *after* the taxes were paid. The Collector appeals contending Sec. 139.-031.1 mandates *concurrent* payment and notice of protest as an indispensable condition to further proceedings for recovery.

The stipulated facts are these: On January 1, 1979, National, as owner of Boaz Apartments, a federally subsidized housing project in St. Louis County, was subject to 1979 ad valorem tax assessment. These taxes, due on or before December 31 of that year, were paid on behalf of National by the Department of Housing and Urban Development's (HUD) check of December 3, received in the Collector's office December 7, 1979. National protested a portion of the assessment by a letter received in the Collector's office December 13, 1979, prior to distribution of the tax monies.[2] Nonetheless, because National's protest letter was

---

1. Sec. 139.031.1, RSMo 1978, provides in pertinent part as follows:

"Any taxpayer may protest all or any part of any taxes assessed against him, except taxes collected by the director of revenue of Missouri. Any such taxpayer desiring to pay any taxes under protest *shall, at the time of paying such taxes, file* with the collector a written statement setting forth the grounds on which his protest is based ..." (Emphasis ours).

All statutory references unless otherwise noted are to RSMo 1978.

2. The customary procedure of St. Louis County is to hold all ad valorem tax monies until after December 31, and then disburse available monies, impounding amounts in dispute.

not filed concurrently with its tax payment, the Collector refused to divide the money received into escrowed and non-escrowed accounts. Acting on National's petition for mandamus, the Circuit Court by its writ directed impoundment of amounts protested pending determination of National's substantive claim. National's challenge to the assessment is presently before the State Tax Commission, which has indicated it will dismiss if an escrowed amount is not available as a source for any tax refund determined by the Commission.

It is well settled that the legislature may prescribe procedures for refunding taxes of doubtful validity, and attention to such statutory procedures must be carefully observed. *See, Horizons West Properties v. Leachman,* 548 S.W.2d 550 (Mo. banc 1977). As stated in *State ex rel. S. S. Kresge Co. v. Howard,* 357 Mo. 302, 208 S.W.2d 247 (1947), a "refund of taxes illegally exacted is ordinarily a matter of governmental grace," 357 Mo. 302, 208 S.W.2d at 250, and it has been further held that legislation should be given effect as written and courts are precluded from amending by judicial construction a statute clear on its face. *State v. Patton,* 308 S.W.2d 641, 644 (Mo. banc 1958); *Brown v. Raffety,* 234 Mo.App. 620, 136 S.W.2d 717, 719 (1940).

The explicit imperative of Sec. 139.031.1 directs that protest statements "shall" be

filed "at the time of paying such taxes...." [3] This Court has previously recognized Sec. 139.031 as facially clear and unambiguous. *Xerox Corp. v. Travers,* 529 S.W.2d 418, 422 (Mo. banc 1975). Additionally, recognizing the detriment to governmental agencies of suspending funds until a protest is resolved, we have held that "explicitly stated" statutory requisites are to be strictly construed and enforced, *Metal Form Corp. v. Leachman,* 599 S.W.2d 922, 925 (Mo. banc 1980), and from this, we hold the quoted language of Sec. 139.031.1 does not permit the filing of a protest letter following the date of payment of taxes as a predicate for a successful protest.[4]

The trial court judicially noticed that real estate taxes are frequently paid by third party financial institutions (HUD here), rendering it difficult for the taxpayer to file his protest at the time his taxes are paid. Assuming arguendo that such fact may be judicially noted, *see, State ex rel. National Lead Co. v. Smith,* 134 S.W.2d 1061, 1068 (Mo.App.1939), that fact cannot justify the court's conclusion. The taxpayer would be well advised to inquire of its lending institution or agency authorized to act in its behalf of the time and plan for payment. The statutory scheme is apparently designed to aid the Collector in the task of matching protests with payments and to facilitate that office's accounting procedures.

**3.** Relying on *Credit Equipment Corporation v. Weston,* 315 S.W.2d 493 (Mo.App. 1958), National urges the inappropriateness of the plain language rule, contending that if carried to its logical extreme, a patent absurdity would result. In *Weston,* the Court of Appeals held that tender by check does not constitute "payment" of a debt, but rather "payment" occurs when the check is honored. Therefore, National argues, reading Sec. 139.031.1 literally mandates filing the protest letter at the time the check is honored. This argument misses the point. The statutory purpose is to meet the needs for administrative control of the payment-protest-impounding sequence of county revenues. For this purpose, it must be said that delivery to and acceptance by the Collector of the taxpayer's (or agent's) check is a convenience, treated as the passage of money, and by acceptance, the Collector has conditionally consented to the check as payment. However, it need not be determined that the Collector has consented to receive the check as abso-

lute payment, but when the check in fact is in due course honored, the debt is discharged pro tanto, as of the time the check was received. *See, Rhodus v. Geatley,* 347 Mo. 397, 147 S.W.2d 631 (1941). Hence, it cannot be said that the Collector has forfeited his remedies for nondischarge of the tax obligation if the check is subsequently dishonored, nor that, if a check were received on December 31 but did not clear in the usual course until January 3, the Collector would be entitled to interest and penalties for late "payment".

**4.** While we believe the *concurrent* requirement of § 139.031.1 would be satisfied if protest letters were filed the same day taxes were paid, we do not decide the possible efficacy of filing a protest letter on a day prior to payment, but this might be acceptable if accompanied by instructions to hold the letter and "file" when payment was received.

636

The judgment of the trial court is reversed and the cause remanded with directions to quash the writ.

All concur.