Dr. Gary EDWARDS, Appellant,

v.

Lawrence M. GERSTEIN,
et al., Respondents.

No. SC 88313.

Supreme Court of Missouri,
En Banc.

Oct. 30, 2007.

missed Dr. Edwards' suit after concluding that the Board members were entitled to quasi-judicial immunity and that the Board employee was immune from suit under the official immunity and public duty doctrines.

Dr. Edwards appeals. He asserts that neither the Board members nor the Board employee are immune from suit and, further, that venue is proper in Jackson County.

The trial court correctly determined that venue was proper in Cole County. The judgment dismissing Dr. Edwards' claims against the Board members is reversed. The judgment dismissing Dr. Edwards' malicious prosecution claims against the Board employee is reversed, and the case is remanded with directions to dismiss those claims without prejudice.

J. Dale Wiley, Wiley Law Office, P.C., Crane, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Matthew B. Briesacher, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

RICHARD B. TEITELMAN, Judge.

Dr. Gary Edwards filed suit in Jackson County alleging that several members of the Missouri Board of Chiropractic Examiners acted with gross negligence during the Board's disciplinary proceedings against him. Dr. Edwards' petition also alleged that a Board employee engaged in malicious prosecution during her investigation of the claims against Dr. Edwards. The Board members and the employee filed a motion to dismiss, or in the alternative to transfer the case to the circuit court of Cole County. The case was transferred to Cole County. The circuit court dis-

### I. Dismissal of the Board members

Dr. Edwards contends that the circuit court erred in granting the Board members' motion to dismiss on the basis of common law quasi-judicial immunity. He argues that section 331.100.5[1] supersedes quasi-judicial immunity by expressly allowing the members of the Missouri Board of Chiropractic Examiners to be held liable for gross negligence.

The primary rule of statutory construction is to "ascertain the intent of the legislature from the language used, to give effect to the intent if possible, and to consider the words in their plain and ordinary meaning." *Nelson v. Crane*, 187 S.W.3d 868, 869–870 (Mo. banc 2006). When interpreting statutes, courts do not presume that the legislature has enacted a meaningless provision. *State v. Winsor*, 110 S.W.3d 882, 887 (Mo.App. W.D.2003).

---

1. All statutory citations are to RSMo 2000.

Section 331.100.5 provides that "[m]embers of the [Missouri Board of Chiropractic Examiners] shall not be personally liable either jointly or separately for any act or acts committed in the performance of their official duties as board members *except gross negligence.*" (Emphasis added). The plain language of the statute establishes that the Board members are generally immune from suit, with the qualification that immunity is inapplicable if a Board member is grossly negligent in performing his or her duties. The Board members' argument that they have absolute immunity renders meaningless the phrase "except for gross negligence." Therefore, in order to give full effect to the plain language of section 331.100.5, the statute must be interpreted as superseding the Board's common law immunity if Board members engage in gross negligence in the performance of their official duties.

The foregoing analysis is consistent with *State ex rel. Golden v. Crawford,* 165 S.W.3d 147 (Mo. banc 2005). In *Golden,* a wrongful death action was filed against several defendants, including a 911 dispatcher. The issue in the case was whether section 190.307 superseded common law official immunity. The statute eliminated civil liability for employees of an emergency system "for any civil damages as a result of any act or omission except willful and wanton misconduct or gross negligence. . . ." Because "[i]t is clear from the express language in this section that the legislature intended for this statutory immunity to supersede the common law official immunity doctrine for the enumerated individuals and agencies," this Court held that "section 190.307 provides the shielded entities with a qualified immunity allowing civil liability only in instances where gross negligence can be established." *Id.* at 148.

Like the statute at issue in *Golden,* the statute at issue in this case supersedes absolute common law immunities and establishes qualified statutory immunity from liability except in cases of gross negligence. Although *Golden* dealt only with official immunity and this case involves quasi-judicial immunity, the distinction is without difference because both are common law immunities subject to legislative modification. The circuit court erred in sustaining the Board's motion to dismiss.

## II. *Dismissal of the Board employee*

In Counts II and III of his petition, Dr. Edwards alleged that the Board employee engaged in malicious prosecution by not conducting and adequate investigation of the claims against Dr. Edwards. Dr. Edwards contends that the trial court erred in sustaining the Board employee's motion to dismiss on the basis of official immunity and the public duty doctrine. As discussed below, there is no need to address the official immunity or the public duty doctrine issue, because Dr. Edwards failed to adequately plead a cause of action against the Board employee.[2]

To state a claim for malicious prosecution, the plaintiff must plead and prove six elements: (1) commencement of an earlier suit against plaintiff; (2) instigation of the suit by defendant; (3) termination of the suit in plaintiff's favor; (4) lack of probable cause for the suit; (5) malice by defendant in instituting the suit; and (6) damage to plaintiff resulting from the suit.

---

**2.** "A motion to dismiss for failure to state a cause of action is an assertion that, while taking all factual allegations as true, plaintiff's pleading are insufficient to establish a cause of action." *Grewell v. State Farm Mut. Auto. Ins. Co.,* 102 S.W.3d 33, 35–36 (Mo. banc 2003). "The issue of whether a claim has been stated upon which relief can be granted is inherent in every appeal and may be raised, sua sponte, by the appellate court." *Brock v. Blackwood,* 143 S.W.3d 47, 55–56 (Mo.App. W.D.2004).

*State ex rel. Police Retirement System of St. Louis v. Mummert,* 875 S.W.2d 553, 555 (Mo. banc 1994). "Because malicious prosecution suits countervail the public policy that the law should encourage citizens to aid in the uncovering of wrongdoing the courts require strict compliance with the requisite elements." *Sanders v. Daniel Int'l Corp.,* 682 S.W.2d 803, 806 (Mo. banc 1984). Dr. Edwards failed to allege in his petition that the Board employee initiated or conducted her investigation with malicious intent. Therefore, Dr. Edwards' petition fails to state a claim for malicious prosecution. The circuit court did not err in dismissing Dr. Edwards' malicious prosecution claims against the Board employee.

## III. *Venue*

■ Dr. Edwards argues that the case should not have been transferred to Cole County because venue was proper in Jackson County.

■ Venue is determined solely by statute. *State ex rel. BJC Health System v. Neill,* 121 S.W.3d 528, 529 (Mo. banc 2003). At the time suit was filed, section 508.010, which is the general venue statute for Missouri, provided that:

> Suits instituted by summons shall, except as otherwise provided by law, be brought:
> (1) When the defendant is a resident of the state, either in the county within which the defendant resides, or in the county within which the plaintiff resides, and defendant may be found;
> (2) When there are several defendants, and they reside in different counties, the suit may be brought in any such county. . . .

Dr. Edwards asserts that venue is proper in Jackson County under section 508.010(2) because one of the Board members resided in Jackson County. In support of this argument, Dr. Edwards relies

*State ex rel. Missouri Department of Natural Resources v. Roper,* 824 S.W.2d 901, 903 (Mo. banc 1992). In *Roper,* the plaintiff was injured in a collision with a truck owned by the Missouri Department of Natural Resources (DNR). The truck driver, an employee of DNR, resided in Boone County. The plaintiff filed suit in Boone County and named as defendants DNR and the truck driver. *Id.* at 902. The issue in the case was "whether a case against a state agency must be brought in the county of its legal residence when there are additional defendants who otherwise could be sued in the county of their residence under . . . the 'general' venue statute." *Id.* This Court noted that when a state agency is the sole defendant and there is no otherwise applicable special venue statute, section 508.010(1) applies and renders Cole County as the only proper venue. *Id.* at 903. However, because the plaintiff filed suit against DNR and a truck driver employed by DNR, this Court held that section 508.010(2) was applicable because there were multiple defendants residing in different counties. Thus, venue was proper in either Cole County, where DNR is located, or in Boone County, where the truck driver resided. *Id.*

■ Dr. Edwards argues that *Roper* is dispositive because this case involves multiple defendants and section 508.010(2) provides that venue is proper in any county in which a co-defendant resides. *Roper* is distinguishable. The defendant truck driver in *Roper* was an agency employee who did not possess official discretionary decision making authority. In contrast, the defendants in this case are members of a state board with official discretionary duties to investigate and bring charges against licensed chiropractors statewide. Accordingly, this case is analogous to the line of cases holding that venue in "actions against state executive department heads

[lies] only ... in the county where their offices are located and their principal official duties are performed." *State ex rel. Spradling v. Bondurant,* 501 S.W.2d 527, 529 (Mo.App. W.D.1973).

Pursuant to article IV, section 12 and article IV, section 20 of the Missouri Constitution, the Board maintains its registered offices in Cole County. Because the Board cannot be "found" in Jackson County, the circuit court did not err in transferring the case to Cole County.[3]

## CONCLUSION

Venue was proper in Cole County under the general venue statute because the defendants were members of a state board with discretionary decision making power. Section 331.100.5 supersedes common law quasi-judicial immunity and permits suits against the Board for gross negligence. Dr. Edwards failed to state a claim for malicious prosecution against the Board employee because he failed to allege that the Board employee initiated or conducted her investigation with malicious intent.

*The judgment is reversed, and the case is remanded. With respect to the claims against the Board employee, on remand, the trial court shall dismiss those claims without prejudice.*

PRICE, LIMBAUGH, RUSSELL, and WOLFF, JJ., and BARNEY, Sp.J., concur.

STITH, C.J., concurs in part and dissents in part in separate opinion filed.

BRECKENRIDGE, J., not participating.

LAURA DENVIR STITH, Judge, concurring and dissenting in part.

I concur with the majority opinion in all respects save one: I do not believe that the General Assembly abrogated quasi-judicial immunity with the enactment of Section 331.100.5.

Three types of immunity are at issue in this case: official immunity, which protects public officials acting within the scope of their authority from liability for injuries arising from their discretionary acts or omissions, *see Kanagawa v. State,* 685 S.W.2d 831, 835–36 (Mo. banc 1985); the public duty doctrine, which recognizes that a public employee's duty normally runs to the public at large rather than to an individual and the public employee therefore cannot be held liable to the individual for injuries allegedly arising from a breach of that duty, *see Green v. Denison,* 738 S.W.2d 861, 866 (Mo. banc 1987); and quasi-judicial immunity, which provides immunity to certain officials when they perform functions that closely resemble the function of a judge or other functions essential to the judicial process, *see Butz v. Economou,* 438 U.S. 478, 512–17, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

As discussed below, official immunity and the public duty doctrine both exist primarily to protect the government and its agents from liability for acts that are performed on behalf of the citizens; they constitute the application of sovereign immunity principles and serve to protect the public purse. Quasi-judicial immunity, by contrast, exists to protect the integrity of the investigatory and judicial processes from unwarranted intrusions.

I agree with the majority that the statute can and does waive the board members' official immunity and their immunity associated with the public duty doctrine, but I cannot agree that this statute abrogates their quasi-judicial immunity as it

---

**3.** The Board employee resides in Boone County. This fact has no bearing on the issue of venue because she was a resident of Boone County, not Jackson County. Thus, in any event, Jackson County is not a proper venue.

relates to their prosecutorial and quasi-judicial functions.

## I. ORIGIN AND PURPOSE OF QUASI-JUDICIAL IMMUNITY

Quasi-judicial immunity has its foundation in the absolute immunity that has long been conferred upon judges for actions undertaken in the exercise of their judicial functions. *See Butz*, 438 U.S. at 508–09, 98 S.Ct. 2894 (discussing history of absolute judicial immunity). Courts historically have recognized that affording immunity from suit to judges is necessary to protect the integrity of the judicial process. "Liability to answer to every one who might feel himself aggrieved by the action of the judge ... would destroy that independence without which no judiciary can be either respectable or useful." *Bradley v. Fisher*, 13 Wall. 335, 80 U.S. 335, 347, 20 L.Ed. 646 (1871) (holding that federal court judges are absolutely immune from suit). "Imposing such a burden on judges would contribute not to principled and fearless decision-making, but to intimidation." *Pierson v. Ray*, 386 U.S. 547, 554–55, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (affirming that state court judges are absolutely immune from suit).

For similar reasons, prosecutors and grand jurors both enjoy absolute immunity from suit under federal law. As the Supreme Court has declared:

> The office of public prosecutor is one which must be administered with courage and independence.... To allow [suits against the prosecutor] ... would open the way for unlimited harassment and embarrassment of the most conscientious officials by those who would profit thereby....The apprehension of such consequences would tend toward great uneasiness and toward weakening the fearless and impartial policy which should characterize the administration of this office.

*Imbler v. Pachtman*, 424 U.S. 409, 423–24, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (quoting with approval *Pearson v. Reed*, 6 Cal. App.2d 277, 44 P.2d 592, 597 (Cal.1935)). Again, the need for prosecuting attorneys to be independent and courageous when deciding whom to prosecute motivates the decision to confer upon them absolute immunity. "It is the functional comparability of their judgments to those of the judge that has resulted in both grand jurors and prosecutors being referred to as 'quasi-judicial' officers, and their immunities being termed 'quasi-judicial' as well." *Imbler*, 424 U.S. at 423 n. 20, 96 S.Ct. 984.

"Immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *see also Cleavinger v. Saxner*, 474 U.S. 193, 200–02, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (discussing the Supreme Court's functional approach to immunity). Because administrative agencies at times perform prosecutorial and judicial functions, the United States Supreme Court has similarly extended this "quasi-judicial" immunity to decision-makers and prosecutors within federal administrative agencies.

*Butz v. Economou*, 438 U.S. at 511–12, 98 S.Ct. 2894, is illustrative. The United States Supreme Court there rejected the contention that the location of administrative personnel within the executive branch of government should vary the degree of their immunity. "We think that the [lower courts] placed undue emphasis on the fact that the officials sued here are—from an administrative perspective—employees of the Executive Branch. Judges have absolute immunity not because of their particular location within the Government but because of the special nature of their responsibilities." *Butz*, 438 U.S. at 511, 98 S.Ct. 2894. The Supreme Court concluded

that "adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." *Id.* at 512–13, 98 S.Ct. 2894.

Based on these principles, administrative hearing officers, agency officials who decide whom to prosecute, and agency attorneys who actually conduct the prosecution are all absolutely immune from liability, even though 42 U.S.C. otherwise waives sovereign immunity from suit of federal officials. *Butz v. Economou*, 438 U.S. 478, 514, 98 S.Ct. 2894, 57 L.Ed.2d 895 ("the risk of an unconstitutional act by one presiding at an agency hearing is clearly outweighed by the importance of preserving the independent judgment of these men and women. We therefore hold that persons subject to these restraints and performing adjudicatory functions within a federal agency are entitled to absolute immunity from damages liability for their judicial acts"); *Id.* at 515, 98 S.Ct. 2894 ("Agency officials performing certain functions analogous to those of prosecutor should be able to claim absolute immunity with respect to such acts"); *Id.* at 516, 98 S.Ct. 2894 ("an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence"). *See also Group Health Plan, Inc. v. State Bd. of Registration*, 787 S.W.2d 745, 750 (Mo. App. E.D.1990) (holding that quasi-judicial immunity protects "[a]gency official responsible for deciding whether to initiate proceedings ... from a suit for damages for their parts in that decision").

Federal courts have applied this principle to preclude suits under section 1983 that are similar in kind to the present suit. For example, *Horwitz v. State Bd. of Medical Examiners*, 822 F.2d 1508 (10th Cir. 1987), evaluated the claim of a podiatrist that the state board of medical examiners violated his civil rights under section 1983 by recklessly pursuing a false claim against him in an effort to discipline his license. The Tenth Circuit concluded:

> the defendant Board members, who performed statutory functions both adjudicatory and prosecutorial in nature, are entitled to absolute immunity from damages liability.... There exists a strong need to insure that individual Board members perform their functions for the public good without harassment or intimidation. There exist adequate due process safeguards under Colorado law to protect against unconstitutional conduct without reliance upon private damages lawsuits. It is important to insulate Board members from political influences in meeting their adjudicatory responsibilities in the adversarial setting involving licensure to practice medicine. Public policy requires that officials serving in such capacities be exempt from personal liability.

*Horwitz*, 822 F.2d at 1515. Other federal courts have reached similar conclusions. *See, e.g., Watts v. Burkhart*, 978 F.2d 269, 274–74 (6th Cir.1992) (*en banc*) (concluding that board of medical examiners entitled to quasi-judicial immunity and overruling previous 3–judge panel decision to the contrary); *Bettencourt v. Bd. of Reg. in Medicine*, 904 F.2d 772, 782–85 (1st Cir.1990) (concluding that board of medical registration is entitled to quasi-judicial immunity).

Without citation to or discussion of these strikingly analogous federal cases relied on by respondent, the majority opinion says quasi-judicial immunity is no different in kind than the sovereign immunity principles reflected in the public duty and official immunity doctrines, and is equally subject to legislative amendment or abolishment. Although, here, the statute would abrogate quasi-judicial immunity

only in the case of gross negligence, presumably the majority would reach the same result were the statute to abrogate such immunity for simple negligence, or were it to impose absolute or strict liability for incorrect decisions, for the principles would be the same.

I respectfully disagree that this analysis is mandated simply because 331.100.5 states that the board shall not be immune from suit for gross negligence. As noted, 42 U.S.C. section 1983 similarly was enacted specifically to waive state sovereign immunity.[1] Yet, *Horwitz* and similar cases readily and uniformly concluded that both common law doctrines of judicial and quasi-judicial immunity persist and cloak those they cover with absolute immunity from suit.[2] Other state courts, equally concerned about the integrity of the decision-making process, have held that statutory waivers of immunity will be similarly narrowly interpreted. *See Berry v. State,* 400 So.2d 80, 82–83 (Fla.App.1981) (interpreting statutory waiver of sovereign immunity narrowly to preserve common law judicial immunity).

I would follow this same path. I would not interpret the very general language of section 331.100.5 broadly to eliminate not just common law immunities of the sovereign, but also those immunities put in place to protect the integrity of the judicial process. I would follow the lead of the United States Supreme Court and interpret this statute more narrowly, in rec-

ognition of the fact that quasi-judicial immunity is different in kind from official immunity and the public duty doctrine. *See Pierson,* 386 U.S. at 554–55, 87 S.Ct. 1213 ("The legislative record gives no clear indication that Congress meant to abolish wholesale all common-law immunities ... and we presume that Congress would have specifically so provided had it wished to abolish the doctrine."). As Judge Learned Hand wrote in 1947: "to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.... [I]t has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1947) (Hand, J.).

In sum, all of the conduct alleged in the petition occurred pursuant to the board members quasi-judicial functions. The statute here makes no express waiver of quasi-judicial immunity. It simply says that the board members are immune from suit in the case of gross negligence. This is sufficient to constitute waiver of official and public duty immunities, doctrines that were developed to protect the sovereign from suit, and which the sovereign therefore can surely waive.

1. It is possible, then, that the plaintiff in this case could pursue a Section 1983 claim against the same defendants alleging the same conduct, and the outcome would be different under federal law than it is under the analysis employed by the majority.

2. None of the federal cases discussed above are constitutional law decisions. Instead, the United States Supreme Court has concluded that the absolute immunity of judges, grand jurors, prosecutors, and administrative adjudicators derives from the common law. *See,*

*e.g., Imbler,* 424 U.S. at 422–23, 96 S.Ct. 984 ("the *common-law* immunity of a prosecutor is based upon the same considerations that underlie the *common-law* immunities of judges and grand jurors acting within the scope of their duties") (emphasis added). Consequently, these cases are not directly binding upon this Court. They do, however, have significant persuasive value, and no doubt for that reason were discussed in the briefs filed with this Court and in the court of appeals' opinion in this case.

But, the common law doctrine of quasi-judicial immunity was developed to protect the integrity of the decision-making process, not to protect the purse of the sovereign. The policy decisions that would go into deciding whether to eliminate that guarantee of impartiality and lack of arbitrariness are far different than those that would underlie a decision to waive sovereign immunity for gross negligence.

It may be that the legislature could expressly waive quasi-judicial immunity in the case of an administrative agency that it has itself created by statute as a part of the executive branch. But, in the absence of an explicit statement that this is the General Assembly's specific intention,[3] I must conclude that the language of section 331.100.5 does not waive quasi-judicial immunity.

For these reasons, I concur in part and dissent in part.

---

**3.** I note that, although constitutional claims were not raised in this case, other courts have suggested that legislative abrogation of common law immunities that protect the integrity of the judicial and quasi-judicial decisionmaking process could present constitutional problems. *See Berry v. State*, 400 So.2d 80, 82–83 (Fla.App.1981) (interpreting broad statutory waiver of sovereign immunity narrowly to preserve judicial immunity to avoid constitutional problems with waiver of judicial immunity); *see also* Mo. Const. art. II, sec. 1.