**The BOARD OF EDUCATION OF the CITY OF ST. LOUIS, Petitioner,**

v.

**Gregory F.X. DALY, Collector of the City of St. Louis, Respondent/Third–Party Plaintiff/Respondent,**

v.

**Value St. Louis Associates, L.P. and STL 300 N. 4th, LLC, Third–Party Defendants/Appellants,**

and

**State Tax Commission, Appellant.**

No. ED 90887.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 16, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 13, 2008.

Application for Transfer Denied
Jan. 27, 2009.

Jane Ellen Dueker, Cicely Irene Miederhoff, James Carter Hetlage, Saint Louis, MO, for Petitioner.

Mark E. Long, Jefferson City, MO, for Appellant.

Anthony J. Sestric, Saint Louis, MO, for Respondent/Third–Party Plaintiff.

Thomas L. Caradonna, Richard Aloysius Ahrens, Saint Louis, MO, for Third–Party Defendants/Appellants.

SHERRI B. SULLIVAN, J.

*Introduction*

Value St. Louis Associates, L.P. and STL 300 N. 4th, LLC (Taxpayers), and the State Tax Commission (Commission) (collectively Appellants), appeal from the trial court's June 13, 2007 Order and Judgment (Judgment) reversing the Commission's Order that Taxpayers are entitled to refunds for taxes paid for the years 2003, 2004 and 2005, finding that Taxpayers did not properly pay the taxes under protest pursuant to Section 139.031,[1] and thus had no refund rights, and denying Taxpayers' motions to compel the refund. We reverse and remand.

*Factual and Procedural Background*

The relevant facts are not in dispute. Taxpayers own the apartment building called the "Mansion House" property in the City of St. Louis.[2] In 2003, Value St. Louis appealed the St. Louis City Asses-

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. STL 300 N. 4th, LLC owns the land under the Mansion House and Value St. Louis owns the improvements. By contractual agreement between these two parties, Value St. Louis pays the real estate taxes and thus is the named party in this case disputing those taxes and instituting proceedings to recoup refunds thereof.

sor's (Assessor) assessment of the Mansion House property to the Commission for tax years 2003 and 2004.[3] On November 10, 2003, the Commission sent notice of Value St. Louis' appeal to the Collector of the City of St. Louis (Collector), in pertinent part, to-wit:

> Pursuant to Sections 138.430.4 and 139.031.2, R.S.Mo, we are notifying you of the taxpayers in your county who have filed an appeal with the State Tax Commission. A listing of the taxpayers who have filed a Complaint for Review of Assessment is enclosed. Section 139.031.2 states that collectors are to impound in a separate fund all portions of taxes which are in dispute in accordance with this notice. You should note that an appeal which has been filed on a parcel that is real estate will affect both tax years 2003 and 2004. In the event a decision is not rendered in an appeal before the 2004 taxes are paid, this serves as notice that such taxes are also to be impounded.... You will be notified of the final disposition of any appeal....

The Commission also sent notice to Value St. Louis that it had received its appeal and had taken such actions as follows:

> We have received your Complaint for Review of Assessment and have assigned it the above appeal number. Please use this number when calling or writing us about your appeal. We will notify you in writing when a hearing is scheduled, and of any further action you may need to present your case. We are also sending notice to the county collector that you have filed this appeal so that payment of your taxes will be considered to be a payment under protest. This will preserve your right to appeal.

Pursuant to its statutory duty under Section 139.031.2, the Collector impounded Value St. Louis' protested payment in a separate interest-bearing account pending resolution of Value St. Louis' appeal.

Value St. Louis' appeal for the 2003 and 2004 tax years was still pending when the Assessor reassessed Taxpayers' property for the 2005 and 2006 tax years. Value St. Louis appealed to the Commission the value of the real property for these tax years as well. On November 7, 2005, the Commission sent notice of Value St. Louis' appeal for tax years 2005 and 2006, in the same format as set forth above, to the Collector, as well as notice to Value St. Louis that it had done so. Again, the Collector impounded Taxpayers' protested payment in a separate interest-bearing account pending resolution of Taxpayers' appeal.

On July 27, 2006, Value St. Louis and the Assessor entered into an agreed stipulation of the fair market value of the real property for tax years 2003 through 2006. On August 1, 2006, the Commission entered Orders approving the stipulation of value in the amount of $394,936.00, exclusive of interest, and directing the Collector to refund the protested taxes in accordance with the approved stipulation.

The Collector refused to refund the protested taxes. As a result, Value St. Louis filed with the Commission a Motion to Compel, for Sanctions, and for an Order to Show Cause. The Commission issued an Order to Show Cause. The Collector filed his Response to the Order, and the Commission's Senior Hearing Officer held a hearing on the Motion. On December 11, 2006, the Senior Hearing Officer entered an Order granting Value St. Louis' Motion,

---

3. Taxes in this case are only assessed every two years, on odd-numbered years. Section 137.115.1.

and ordered the Collector to refund the disputed taxes and interest for the 2003, 2004 and 2005 tax years.[4]

The Collector filed an Application for Review of the Order to the full Commission. Value St. Louis filed a Response to the Application. On January 30, 2007, the full Commission affirmed the Order.

The Collector then filed a Petition for Judicial Review of the Commission's decision in the trial court. At the time the Collector filed his Petition for Judicial Review, two other cases were pending in the trial court related to the taxes at issue here. All three cases were consolidated.

On June 13, 2007, the trial court entered an Order and Judgment permitting the Collector to distribute to the taxing authorities Value St. Louis' disputed taxes for tax years 2003, 2004 and 2005, finding that notwithstanding the 1999 amendment to Section 139.031, that under Section 139.031.1, Value St. Louis was required to file a written statement with the Collector at the time it paid its taxes in order to preserve its right to refund, and notice to the Collector of Value St. Louis' appeals pursuant to Section 139.031.2 did not eliminate the need to file a written statement of protest at the time of payment of the taxes pursuant to subsection 1. On July 2, 2007, the trial court declared its June 13, 2007 Order and Judgment final for purposes of appeal.

This appeal follows.[5]

*Points On Appeal—Taxpayers*

In their first point, Taxpayers contend that the trial court erred in reversing the Commission's Order that directed the Collector to refund the taxes, in denying Taxpayers' motions to compel the refund, and in entering its Judgment that Taxpayers had no refund rights, because under Section 139.031.2, the Collector's receipt of notice of an appeal to the Commission under Section 138.040 requires the Collector to impound the disputed funds and refund them if the appeal is resolved in favor of Taxpayers even absent separate notice of protest. Taxpayers maintain that they timely appealed the tax assessments and the Commission notified the Collector of the appeals so that the Collector could impound the disputed funds.

In their second point, Taxpayers assert that the trial court erred in reversing the Commission's Order on the appeal of the Collector, and in entering its Judgment that Taxpayers had no refund rights, because the Collector was under a ministerial duty to make the refunds ordered by the Commission, and had no standing to appeal the Commission's refund Order, in that the Collector's only function in a property tax appeal is to disburse the funds as ordered, and he is not an aggrieved party.

*Point on Appeal—Commission*

In its point on appeal, the Commission claims that it did not err in issuing its Order compelling the Collector to refund the taxes to Taxpayers, because the notice requirements of Section 139.031 were met

**4.** The taxes for year 2006 are not at issue here, as the Collector issued a revised tax bill to Value St. Louis in 2006 which properly reflected the stipulated settlement for tax year 2006.

**5.** Appellants each filed Notices of Appeal to the Supreme Court of Missouri invoking the Supreme Court's exclusive appellate jurisdic-

tion under Article V, Section 3 of the Missouri Constitution, which vests the Supreme Court with exclusive appellate jurisdiction over matters involving the construction of the revenue laws of the state. On January 30, 2008, the Supreme Court transferred the appeal to this Court under Article V, Section 11 of the Missouri Constitution.

in that the Commission sent the notice required by Section 139.031.2 to the Collector, i.e., that an appeal was filed by Taxpayers with the Commission, and the Collector received the notice and properly impounded the funds as required by law, and such notice met the statutory requirements for a tax protest.

## Standard of Review

This Court reviews the decision of the Commission and not the decision of the trial court. *Snider v. Casino Aztar/Aztar Missouri Gaming Corp.*, 156 S.W.3d 341, 346 (Mo.banc 2005). This Court is limited to determining whether the Commission's decision is supported by competent and substantial evidence upon the whole record or whether it was arbitrary, capricious, unreasonable, unlawful, or in excess of the Commission's jurisdiction. *Id.*

Statutory construction is a matter of law, not of fact, and accordingly our review is *de novo*. See *St. Louis County v. State Tax Commission*, 562 S.W.2d 334, 337–38 (Mo.banc 1978) (Administrative agency decisions based on agency's interpretation of law are matters for independent judgment of the reviewing court, and correction where erroneous).

## Discussion

### Standing

As standing is a prerequisite to bringing a cause of action, we initially address Taxpayers' second point on appeal. Taxpayers assert that the Collector lacked standing to appeal the Commission's refund Order, because the Collector is not an aggrieved party and his only function in a property tax appeal is ministerial, to-wit: to disburse the funds as ordered by the Commission.

In support of their point, Taxpayers cite two cases, *State ex rel. St. Louis County v. Dunne*, 421 S.W.2d 283, 284 (Mo.banc 1967) and *Kostman v. Pine Lawn Bank & Trust Co.*, 540 S.W.2d 72, 78 (Mo.banc 1976). Neither of these two cases is on point to the facts of, and issues presented by, the instant case, as *Dunne* involved the act of a county treasurer in issuing funds for audited claims, and *Kostman* concerned the act of a Commissioner of Finance in seeking circuit court review of a decision and order of the State Banking Board.

We find the Taxpayers' lack of standing argument to be unsupported by any case law, and also fundamentally without merit because our statutory scheme clearly charges the Collector to be the party to assert when taxes are not properly paid under protest, because he did not receive the proper statutory notice. Section 139.031.4 provides that "[e]ither party to the proceedings [Collector or taxpayer] may appeal the determination of the circuit court." Furthermore, if a taxpayer does not give the Collector proper notice that he is paying under protest, who is going to disclose that if not the Collector? His standing to make such claims has never been questioned before, and with reason. He is the one statutorily entitled to receive proper notice of tax protest, and as the one entitled to such notice, he is concomitantly the one to assert he did not receive it.

For the foregoing reasons, Taxpayers' second point on appeal is denied.

## Payment Under Protest Under the 1999 Amendment

Taxpayers' first point on appeal and the Commission's point on appeal are fundamentally the same, and thus will be addressed concurrently.

Section 139.031.1–4 allows Missouri taxpayers to pay disputed taxes assessed for their property under protest and seek a refund of those taxes. Section 139.031.1–4 provides as follows:

1. Any taxpayer may protest all or any part of any current taxes assessed against the taxpayer, except taxes collected by the director of revenue of Missouri. Any such taxpayer desiring to pay any current taxes under protest shall, at the time of paying such taxes, file with the collector a written statement setting forth the grounds on which the protest is based. The statement shall include the true value in money claimed by the taxpayer if disputed.

2. Upon receiving payment of current taxes under protest pursuant to subsection 1 of this section *or upon receiving notice of an appeal pursuant to Section 138.430, RSMo*, the collector shall disburse to the proper official all portions of taxes not disputed by the taxpayer and shall impound in a separate fund all portions of such taxes which are in dispute. Except as provided in subsection 3 of this section, every taxpayer protesting the payment of current taxes shall, within ninety days after filing his protest, commence an action against the collector by filing a petition for the recovery of the amount protested in the circuit court of the county in which the collector maintains his office. If any taxpayer so protesting his taxes shall fail to commence an action in the circuit court for the recovery of the taxes protested within the time prescribed in this subsection, such protest shall become null and void and of no effect, and the collector shall then disburse to the proper official the taxes impounded, and any interest earned thereon, as provided above in this subsection.

3. No action against the collector shall be commenced by any taxpayer who has, for the current tax year in issue, filed with the state tax commission a timely and proper appeal of the protested taxes. Such taxpayer shall notify the collector of the appeal in the written statement required by subsection 1 of this section. The taxes so protested shall be impounded in a separate fund and the commission may order all or any part of such taxes refunded to the taxpayer, or may authorize the collector to release and disburse all or any part of such taxes in its decision and order issued pursuant to Chapter 138, RSMo.

4. Trial of the action in the circuit court shall be in the manner prescribed for nonjury civil proceedings, and, after determination of the issues, the court shall make such orders as may be just and equitable to refund to the taxpayer all or any part of the current taxes paid under protest, together with any interest earned thereon, or to authorize the collector to release and disburse all or any part of the impounded taxes, and any interest earned thereon, to the appropriate officials of the taxing authorities. Either party to the proceedings may appeal the determination of the circuit court.

[Emphasis added.] The language in subsection 2 that was added by the Legislature in 1999, and is the subject of dispute presented in this appeal, is emphasized in bold.

The fundamental issue presented by this appeal is this: When the legislature amended Section 139.031.2 by adding the language "or upon receiving notice of an appeal pursuant to section 138.430, RSMo," to the prior language "Upon receiving payment of taxes under protest pursuant to subsection 1 of this section . . . the collector shall disburse to the proper official all portions of taxes not disputed by

the taxpayer and shall impound in a separate fund all portions of such taxes which are in dispute," did the legislature intend for the newly added method of notice of disputed funds and resulting directive to the Collector to impound such funds to obviate the need for a separate letter of protest as set forth in subsection 1? We believe it did so intend, as long as the notice of appeal includes the grounds on which the dispute is based, and the true value in money claimed, if disputed. We note that this is a case of first impression in Missouri, although a previous case recognized the potential issue without deciding it.[6] Although we rely on case law interpreting the construction, purpose and function of Section 139.031 both prior to and after 1999, we note that none of these cases has examined the precise issue before us now.

The primary rule of statutory construction is to determine the intent of the legislature from the language used by considering the plain and ordinary meaning of the words used in the statute. *Dubinsky v. St. Louis Blues Hockey Club*, 229 S.W.3d 126, 130 (Mo.App. E.D.2007). Where the language of a statute is unambiguous and clear, this court will give effect to the language as written, and will not engage in statutory construction. *Id.* We presume that the legislature intended that each word, clause, sentence, and provision of a statute have effect and should be given meaning. *Id.* Conversely, we presume that the legislature did not insert superfluous language or idle verbiage in a statute. *Id.* Courts are not authorized to read a legislative intent into a statute that is con-

trary to the intent made evident by the plain and ordinary meaning of the statutory language. *Id.*

The rule of statutory construction most relevant to our resolution of the issue presented in this appeal is thus: we presume that the legislature intended that each word, clause, sentence, and provision of a statute have effect and should be given meaning, and not that the legislature inserted superfluous language or idle verbiage in a statute. *Dubinsky*, 229 S.W.3d at 130. The statutory construction engaged in by the Collector results in a presumption that the added language to Section 139.031.2 is superfluous and meaningless, because the effect of the Collector's construction is that the action of the Collector in impounding the disputed funds presented in an appeal, after notice of the appeal, is fruitless because the Collector can then refuse to refund the funds due to an alleged failure to file the separate notice of protest in Section 139.031.1, which was *previously*, prior to the 1999 additional form of notice, the only method of notice to the Collector of disputed taxes. This construction is senseless and leads to an absurd result. Courts will not construe a statute "to produce an unreasonable, oppressive, or absurd result" and will "construe all of the provisions of the statute ... together and will harmonize all of the provisions if reasonably possible." *Kincade v. Treasurer of State of Missouri*, 92 S.W.3d 310, 311 (Mo.App. E.D.2002).

This analysis leads us to the heart of the issue in this case, which is notice. Prior to the 1999 amendment, a letter of protest

6. In a footnote, our colleagues in the Western District in *Stanton v. Wal–Mart Stores, Inc.*, 25 S.W.3d 538 fn. 2 (Mo.App. W.D.2000), noted:

Section 139.031.2 has been amended effective with the 1998 tax year to require that the Collector impound disputed taxes upon receiving notice from the State Tax Commission that a taxpayer has filed an appeal with the Commission. The language of § 139.031.1 requiring written protest at the time of payment was not amended. The effect of the 1998 amendment is unclear but, in any event, does not apply herein.

from the taxpayer in conjunction with the taxpayer's payment of the disputed taxes to the Collector under Section 139.031.1 was the *only* method of notifying the Collector that the funds needed to be impounded in a separate fund, because they may be subject to recovery by the taxpayer. In 1981, our Supreme Court noted that the statutory purpose of Section 139.031.1 is to meet the needs for administrative control of the payment-protest-impounding sequence of county revenues. *State ex rel. Nat. Inv. Corp. v. Leachman,* 613 S.W.2d 634, 635 (Mo.banc 1981). The *Leachman* Court additionally noted that "the statutory scheme is apparently designed to aid the Collector in the task of matching protests with payments and to facilitate that office's accounting procedures." In *Leachman,* the taxing authority received a tax payment without a protest. The Supreme Court stated that "[Section] 139.031.1 does not permit the filing of a protest letter following the date of payment of taxes as a predicate for a successful protest," because such late protest disrupted the "payment-protest-impounding sequence" and frustrated the statutory scheme. *Id.* at 635 n. 3.

Such is not the case here. The Collector impounded the funds disputed by Taxpayers upon notice of their appeal to the Commission. Such notice was actually prior to Taxpayers' payment of the disputed taxes. The notice included the grounds on which their dispute was based, and the disputed true value in money claimed by Taxpayers, just as is required by the method of notice set forth in Section 139.031.1. The statutory scheme was meticulously followed and not frustrated by any means. The Collector cannot argue otherwise and his reliance on our case law's strict construction of subsection 1 of Section 139.031 favors form over function in that it ignores the functional purpose of the added form of notice in the 1999 amendment. It also ignores the purpose and policy of the holdings of those cases, which required strict adherence to a formerly exclusive form of notice, because of its exclusivity. To continue to require strict adherence to a formerly exclusive form of notice, when another optional form of notice has been added by our legislature, is oppressively burdensome. Such a construction of the statute is forbidden. *Kincade,* 92 S.W.3d at 311.

Likewise, we find that the Collector's interpretation of the effect of the 1999 amendment leads to a factually absurd result, as is evidenced in the procedural events that actually took place in this case, to-wit: The Commission timely gave the Collector notice in writing that the taxes paid by Taxpayers were disputed and subject to an appeal with the Commission. This notice was given prior to the timely payment of the disputed taxes. Pursuant to its statutory obligations set forth by the 1999 amendment, the Collector impounded the funds, knowing the funds were disputed, and did not disburse them to the relevant taxpaying authorities. The Assessor and the Taxpayers then resolved the assessment and stipulated to an agreed upon amount. No one disputes the stipulated assessment. Then the Commission, under its power and duty set forth in Section 139.031.3 ("... the commission may order all or any part of such taxes refunded to the taxpayer ... in its decision and order issued pursuant to Chapter 138"), ordered the Collector to refund the taxes to Taxpayers.

At this point, long after proper statutory notice was given, the Collector balked at the form of notice he was given; not because it prevented the orderly functioning of the taxpaying scheme, or frustrated the Collector's ability to properly impound the protested funds in a timely fashion, but for a reason which really remains a mystery.

The Collector's stance ironically frustrates the current statutory scheme just as much as the strict construction of subsection 1 that the Collector relies on was designed to prevent. The Collector's position renders not only the statutory language of the 1999 amendment useless, but renders the Collector's own actions in impounding the funds useless as well. The legislature is presumed not to require meaningless acts. *Edwards v. Gerstein*, 237 S.W.3d 580, 581 (Mo.banc 2007).

When an amendment is made to a statute, specifically by adding an option with the word "or," as in this case, the proper construction is that there is now an alternative to what was formerly an exclusive method. The word "or" in the 1999 amendment is a "qualifier" or "modifier." Prior to the 1999 amendment, the only way the Collector could receive notice of taxes paid under protest was if the taxpayer, at the time it paid its taxes and *not after*, filed a written notice of protest in compliance with subsection 1. If such procedure was not followed, the Collector would have no notice; the taxpaying scheme would be frustrated and disrupted with potential revenue loss, *if* the taxpayer was allowed to seek a refund without having given such contemporaneous notice. For those reasons, case law has held that Section 139.031.1 mandated concurrent payment and protest *as a predicate to further proceedings. Leachman*, 613 S.W.2d at 635. In the instant case, further proceedings were had, with no argument from the Collector that proper notice had not been given. In fact, the Collector's impoundment of the funds indicates a tacit recognition of the propriety of the statutory form of notice the Collector was given.

The Collector relies on *Lane v. Lensmeyer*, 158 S.W.3d 218, 222–23 (Mo.banc 2005) to support its construction of the

statute as amended. *Lane*'s holding was limited to:

(1) as a matter of first impression, the phrase "produce substantially the same revenues as required in the annual budget," meant that the amount of the revenues produced be practically, nearly, almost, essentially, or virtually the same as that required in the budget, and

(2) the tax levy rate generated substantially the same revenues as the school district's budgeted needs.

*Id.* at 232. *Lane* did not even remotely involve the issue of whether when the legislature amended Section 139.031.2 by adding the language "or upon receiving notice of an appeal pursuant to section 138.430," the legislature intended for that new method of notice of disputed funds and resulting directive to the Collector to impound such funds to obviate the need for a separate letter of protest as set forth in subsection 1. Rather, *Lane* involved a declaratory judgment challenge to a school district's tax levy rate and the propriety of a refund for taxes mistakenly or erroneously levied and collected under Section 139.031.5.

A judicial opinion should be read in light of the facts pertinent to that case, it being improper to give permanent and controlling effect to statements outside the scope of the real inquiry of the case. *McKinney v. State Farm Mut. Ins.*, 123 S.W.3d 242, 248 (Mo.App. W.D.2003); *State v. Miles Laboratories*, 365 Mo. 350, 282 S.W.2d 564, 573 (Mo.banc 1955). As such, *Lane* has no bearing on the instant case.

For the foregoing reasons, the Commission's point on appeal and Taxpayers' first point on appeal are granted.

### Conclusion

The trial court's Judgment is reversed and remanded, with directions to reinstate the Commission's Order directing the Col-

lector to refund the taxes to Taxpayers consistent with this opinion.

LAWRENCE E. MOONEY, P.J., and CLIFFORD H. AHRENS, J., concur.