STATE EX REL. SOPHRONIA EDWARDS, RESPONDENT, v. D. F. DONOVAN ET AL., APPELLANTS.—41 S. W. (2d) 842.

Kansas City Court of Appeals. June 15, 1931.

 · · ¡ ¡ ' '

*John I. Williamson* for respondent.

*George Kingsley, Marcy K. Brown, Jr., Milton J. Oldham* and *William F. Allen* for appellant.

BOYER, C.—These actions were instituted by the mother of a deceased member of the fire department of Kansas City against the members and secretary of the Board of Trustees of the Firemen's Pension Fund. They were filed on the same day, January 21, 1928. The first-numbered action was for a writ of *certiorari* to require defendants to transmit to the clerk of the circuit court their complete records and orders pertaining to the application of relatrix for the payment of a pension of $25 per month and a subsequent request to reopen the case, and that all said records and the action of said board thereon be quashed. The second was a proceeding in mandamus to require defendants or their successors to recognize the claim of relatrix as valid and legal and to pay her the sum of $25 per month since the decease of her said son.

The writ of *certiorari* was issued and return thereto duly made. An alternative writ of mandamus was issued and a motion to quash same was duly filed. It was overruled and defendants filed return. By stipulation of the parties, reciting that as questions of law and fact in each case arise out of the same evidence, it was agreed that the cases may be consolidated and heard together; that the evidence offered and the record made in the first case may be considered as the evidence and record in the second case the same as if separately tried; and that in the event of an appeal by either party the causes may be consolidated and heard in the same manner in the appellate court.

After hearing the evidence it was ordered and adjudged in the *certiorari* case that the records of the Board of Trustees of the Firemen's Pension Fund in regard to the action of said board in denying the applications of relatrix "be and the same are hereby quashed, annulled, vacated, set aside, and for naught held."

And thereafter judgment was entered in the mandamus proceeding in which the issues were found for the relatrix and it was ordered and adjudged that a peremptory writ of mandamus be issued as follows:

394

"Whereas, on the trial of the issues in the above entitled cause, this court has duly found and adjudged the same in favor of relatrix, Sophronia Edwards, nevertheless, you, and each of you, have refused illegally, and still do refuse, to take every step necessary to recognize the right and claim of relatrix as valid and legal, and to pay to relatrix out of the Retirement Fund the sum of twenty-five ($25) dollars for each and every month since December 21, 1921, with interest at six per cent per annum upon each monthly installment of $25 from the date when said installment became due and payable, to the manifest injury of said Sophronia Edwards, relatrix herein, as the court hath duly found and adjudged.

"Now therefore, we being willing that full and speedy justice should be done in this behalf to her, the said Sophronia Edwards, do demand that you D. F. Donovan, John T. Barker, Maurice Carey, Charles Ragan, T. J. Eagan, H. C. Stomp, J. J. McDonnell, and C. J. O'Hare, as members of the Board of Trustees of the Fireman's Pension Fund, or your successors and D. J. McCarty, as secretary of said Board of Trustees of the Fireman's Pension Fund, or your successor, without further excuse or delay, take every step necessary to recognize the right and claim of the relatrix as valid and legal, and that you pay to the relatrix out of the Retirement Fund the sum of twenty-five ($25) dollars for each and every month since December 21, 1921, with interest at six per cent per annum upon each monthly installment of $25 from the date when said monthly installment became due and payable, and we do also command that you make known to said court on the 25th day of June, 1928, how you shall have executed this writ, and have you then and there this writ."

Defendants duly appealed in both cases. Numerous assignments of error are set forth in each case, but the only material points which are developed in the brief and argument may be summarized as follows: (1) That deceased had not been regularly appointed a member of the fire department; was not a member of the firemen's pension and retirement funds, and had not paid an initiation fee or monthly dues; that he was a substitute and not a "regular" fireman; (2) that the Board of Trustees of the Firemen's Pension Fund and Retirement Fund has complete control and management of said funds, and its decision is final and not subject to judicial review; (3) that relatrix is barred on account of laches; (4) that the actions are barred by statutes of limitation.

. There is little controversy over the facts. The evidence shows that Robert J. Edwards died October 21, 1921, from injuries received by him while in the performance of the regular duties of a fireman and in the service of the fire department of Kansas City, Missouri.

At that time Sophronia Edwards was his dependent mother. He had been appointed to the position of substitute in the fire department and, when called, had for several months performed the regular duties of a fireman; he was not permitted to hold any other position and was required to be ready for service at any time. The payrolls of the city and other evidence show that he rendered service and was paid the fixed compensation therefor for thirty days during the month of April; thirty-one days in May; twenty and one-half days in June; sixteen days in July; thirty-one days in August; nineteen days in September, and a portion of the month of October, 1921, preceding his injury and death. He had not paid any fee or dues into any fund available for pension. He was an unmarried man and his mother was his sole surviving parent and dependent upon him for support. She filed her application with the Board of Trustees of the Firemen's Pension Fund, October 25, 1921, to be placed on the pension list in accordance with the statutes and rules of the board by reason of the death of her son who at the time thereof was a member of the Kansas City fire department. At a meeting of the board, March 7, 1922, the application was, according to the minutes, "received and referred to the committee on relief and retirement." At a subsequent meeting of the board held April 5, 1922, the record shows there was before the board a letter from the city counselor in reference to the application of Mrs. Edwards in which it was given as the opinion of the counselor that "the applicant is not eligible for a pension" under the provisions of the statute and the rules of the board. The opinion was based "on the facts which have been furnished to this office." The record of the board shows that a motion was made and carried that the board concur in the report and recommendation made by the counselor and that the application of Mrs. Sophronia Edwards for relief be rejected. There is no showing that the committee on relief and retirement ever made any investigation or report; nor is there any showing that the board at any time notified the claimant of any hearing to be had upon her application, or that any hearing was ever held at which any evidence was received or at which the claimant was present or represented. There was no notice given the applicant of the action of the board. Nothing further appears in the records of the board in reference to the application made until February 1, 1927, at which time, in regular meeting, there was before the board a letter from one Weber, a son-in-law of claimant, requesting the board to reopen the case in the matter of a pension for Mrs. Edwards, together with a letter of the then city counselor in reply to a request for an opinion in the matter of the application of Mrs. Edwards. It was stated as the opinion of the counselor that the board had no authority to pay Mrs. Edwards from the fund

available for pension. On motion made and carried the board ordered "that the opinion from the city counselor be filed and the request of Mrs. Edwards to reopen her case be refused." Weber was notified that the board refused to reopen the case, but there was no notice to Mrs. Edwards and she did not learn of the action of the board or of the disposition of her claim until about July, 1927. Her evidence also shows, and it is not controverted, that Weber did not represent her in 1927. She was never notified of any hearing at any time, nor requested to appear before the board, and had no opportunity to be heard upon any matter of law or fact in connection with her claim.

The first point urged is in effect that Robert J. Edwards was not a member of the fire department, but was merely a substitute, and neither he nor his dependents were in the class contemplated by the law to receive pension. Pertinent parts of the statutes and rules of the board will be set forth. Section 9054, Revised Statutes 1919, authorizes any fire department or any municipal authority in cities of more than 100,000 inhabitants to create funds for the purpose of pensioning firemen and to provide for the relief of the families and other dependents of such firemen in case of death under such rules and regulations as may be enacted by the board of trustees of such funds. Sections 9058, 9059, and 9060, create the "relief fund" and the "retirement fund" and provide sources of revenue for said funds. Section 9061, relative to the powers of the board, provides:

"The board of trustees of the firemen's funds shall have exclusive control and management of the separate funds mentioned in sections 9054 to 9078, inclusive, and of all the moneys donated, paid or assessed, for the relief or pensioning of crippled, disabled or retired members of the fire department and their widows, minor children and dependents. Said board shall make all needful rules and regulations for its government and the discharge of its duties, and shall hear and decide all applications for relief or pensions under said sections, and its decision on such applications shall be final and conclusive and not subject to review and reversal except by the board, or on rehearing by the circuit court, and a record shall be kept of all the meetings and proceedings of the board."

Section 9063, provides:

"The board of trustees may assess each member of the fire department such sum per month as may be determined by the rules and regulations adopted by the board . . .; the sums so assessed to be deducted and withheld from the monthly pay of each member, and the same to be placed by the treasurer of the board to the credit of the 'retirement fund.' "

Section 9068, provides:

"If any member of such fire department being single and unmarried shall, while in the performance of his duty, be killed, or die as the result of an injury received, . . . and shall leave a father or mother who are dependent upon him for support, . . . said board of trustees shall direct the payment from the 'retirement fund' monthly to each such dependent parent, . . . such sum of money as may be determined by the rules and regulations provided for the management of said funds.''

Section 15 of the rules and regulations governing the Board of Trustees of the Firemen's Pension Fund provides that the monthly payment to the mother in such cases shall be $25.

The fact that Robert J. Edwards was a substitute and not a "regular" fireman does not preclude the claim of his dependent mother. It is not a question of the kind or class of fireman to which he belonged, but the material inquiry is: Was he a member of the fire department? The statute makes no distinction between members whether regular or irregular, permanent or substitute. Its terms are inclusive and apply to any and all "members of such fire department" (sec. 9054), and to "any member of such fire department" (sec. 9068).

We think it obvious that the board in the hearing and disposition of an application for pension has no right to discriminate by the creation of a fictitious class of firemen and thereby exclude a dependent applicant. Nor is it essential that the deceased should have contributed by way of initiation fee or dues, unless such dues and fees are duly and regularly assessed and required to be paid by the board. Section 9063, above quoted provides that the board of trustees *may* assess each member as determined by its rules. It was a matter of option with the board to require the payment of dues from substitutes which was waived. There is no showing that the deceased was ever assessed any dues or requested to pay same, or that he ever declined or refused any such request. It appears from the record that it was the rule and practice to deduct certain stated dues from the monthly pay of each permanent fireman, but that no dues were required of other firemen until 1926. A rational basis for the assumption that the statute makes no distinction between a regular and a substitute fireman and that none was contemplated, is clearly established by the evidence in this case which shows that a substitute fireman is in every essential particular no less a fireman than one who may be designated regular or permanent. His duties, responsibilities, and hazards are the same, and the law contemplates that his dependents shall receive the same consideration as the dependents of any other fireman. There is no basis in logic or law for any discrimination.

Appellants' next point is that the board of trustees has absolute control and management of the funds in its hands and that its decision in all matters pertaining to said funds is final and not subject to review by any court except for fraud. We have seen, as quoted above, that section 9061 provides that the board "shall hear and decide all applications for pensions . . . and its decision on such applications shall be final and conclusive and not subject to review and reversal except by the board, or on rehearing by the circuit court." These words are significant, not only in reference to the power of review, but in reference to what the board shall do when a claim for pension is presented. It is clear that no *ex parte* proceeding is contemplated, and that the board may not arbitrarily deny an application without a hearing of the facts and a consideration of the law applicable. No one should be denied the right of a hearing, and a hearing in this instance means a trial of the case, however informal it may be, and the right and privilege of the claimant to be heard before a decision is reached. From all that appears in the record before us the board merely referred the application to a committee and thereafter, without receiving any report from the committee or without hearing any evidence and without any notice to the claimant, determined the facts and law of the case merely upon the advice of its counsel based on hearsay and denied the application. There had been no legal hearing and there was no competent evidence before the board to justify any order or decision by it. This and its subsequent proceeding upon an application to reopen the case, without any notice to the applicant or opportunity to be heard, were entirely irregular, and its record, upon the petition for *certiorari,* was properly annulled because contrary to the letter and spirit of the law. The fact that the board has exclusive control and management of the funds cannot in any sense justify the denial of a legal claim against said funds.

There is no merit in the plea made in the return, and in the point, that respondent was barred on account of laches. The doctrine of laches is an equitable concept and finds its particular field of application in equity cases. But whenever applied, the rule of action is founded on some change in the status of property or in the relation of the parties to each other which has operated to the disadvantage of one of the parties. As stated in Rollestone v. National Bank of Commerce, 299 Mo. 57, 76:

"Laches in legal significance, is not mere delay, but delay that works to the disadvantage of another: It is not like limitation a mere matter of time, but is principally a question of the inequity of permitting a claim to be enforced, this inequity being founded on some change in the conditions or relations of the property or the parties."

In the instant case there is no plea or showing of any prejudicial result to the defendants occasioned by delay and arising from changed conditions or relations.

One of the defenses made in the returns to the writs, and urged on appeal, is that respondent's actions are barred under sections 1317 and 1318, Revised Statutes 1919, which provide respectively for the five and three year periods of limitation. Both parties cite and discuss a part of the holding of this court in the case of State ex rel. v. Kansas City, 217 Mo. App. 288, 297, 263 S. W. 516, 519. That was a mandamus case and the relator sought reinstatement to a civil service position and recovery of compensation on account of wrongful discharge. The request for reinstatement was withdrawn and the case was determined on the issues of wrongful discharge and the amount which relator should recover. The three-year Statute of Limitation was interposed as a defense. The court held that section 1318, being the three-year statute, did not apply to the case and that the five-year period of limitation, or section 1317, did apply. The latter section does not appear to have been urged as a defense and the facts brought the case clearly within the five-year period. Aside from the holding that the three-year statute does not apply, the case is not strictly applicable to the proceedings which we are considering.

By stipulation of the parties the proceedings before us are consolidated and we have both *certiorari* and mandamus to be considered in a sense as one action. And so considered, the right of respondent to maintain her action is not necessarily controlled by either section of the statute named. The writ of *certiorari* is discretionary. The effect in the present proceeding was to adjudicate and establish the right or claim of relatrix at the institution of her suit and to restore her to such rights. Under the evidence such writ was properly issued. The question is: What rights were restored to her and what demands could legally be enforced and executed by mandamus at said time? The judgment in *certiorari* recognized and established that she had legal rights to enforce; otherwise it would have been futile and barren of benefit to the relatrix. Mandamus in this case is merely ancillary to the *certiorari* proceeding and for the purpose of execution. The record of the board was properly quashed, and thereafter the board refused to take any further steps for the allowance and payment of a pension to respondent, and it was then proper and right for the court to order that the board take such steps and pay the amount of pension to which claimant was entitled under the statutes and rules of the board. The question of limitation is applicable only to the period of time which could be properly covered by the judgment in the mandamus case for the recovery of

back pension. We are of opinion and hold that section 1317, should be applied and that respondent is not entitled to recover more than five years back pension, and that the judgment in the mandamus case directing payment for a period exceeding five years is erroneous.

The petitions in these cases were filed January 21, 1928. Respondent demanded and the court allowed her a peremptory writ of mandamus directing the Board of Trustees to recognize her right and claim and to pay her $25 for each and every month since December 21, 1921. This portion of the judgment is erroneous and should be modified in order to require only such payments as would accrue during the five-year period immediately preceding the date of suit. Any claim for payments ante-dating the said five-year period should be considered as barred; and all claims arising within said period were in effect established as live demands by the judgment in *certiorari*.

It results that the judgment in the *certiorari* case should be affirmed, and that the judgment in the mandamus case should be reversed and remanded with direction to modify it in accordance with the views herein expressed. The Commissioner so recommends. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of Boyer, C., is adopted as the opinion of the court. The judgment in the *certiorari* case is affirmed, and the judgment in the mandamus case is reversed and remanded with direction to modify it according to the views herein expressed. All concur, except *Trimble, P. J.,* absent.