Linda GERKEN, et al., Respondents,

v.

Gary SHERMAN, et al., Appellants.

No. WD 72601.

Missouri Court of Appeals,
Western District.

June 28, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 2, 2011.

Mark E. Long, Bradford R. Jones, Jefferson City, MO, for Appellants.

Deborah S. Greider, Clayton, MO, Barbara J. Gilchrist, John J. Ammann, Amy N. Sanders, St. Louis, MO, for Respondents

Before: MARK D. PFEIFFER, P.J., THOMAS H. NEWTON, and ALOK AHUJA, JJ.

THOMAS H. NEWTON, Judge.

The Missouri Family Support Division[1] and the Director of the Department of Social Services (collectively "Division") appeal from the trial court's judgment in favor of a class composed of pensioners of Missouri's blind pension fund (Pensioners). They contend the trial court erred in its rulings as to the statute of limitations and its awards of damages, prejudgment interest, and attorney's fees. We affirm in part, reverse in part, and remand.

### Factual and Procedural Background

The Missouri Constitution requires the General Assembly to levy an annual property tax for the blind pension fund in order to pay pensions to "the deserving blind." Mo. Const. art. III, § 38(b);[2] *Gerken v. Sherman*, 276 S.W.3d 844, 846 (Mo.App. W.D.2009) (*Gerken I*). On February 16, 2006, Pensioners sought, *inter alia*, a declaratory judgment that the pension amounts were improperly calculated, and requested an accounting of the fund. *See Gerken I*, 276 S.W.3d at 847.[3] They contended that pursuant to subsection 209.040.4, which sets out the formula for calculating increases to the pensions, (1) monthly pensions to the blind should have been higher before fiscal year 1999 and (2) the Division incorrectly calculated increases after fiscal year 1999. The parties filed a joint stipulation of facts and exhibits relevant to the claims. The trial court denied Pensioners' requests, and Pensioners appealed. *Id.*

In *Gerken I*, we affirmed the trial court in part, reversed in part, and remanded.[4] *Id.* We determined that the Division's method of calculation was incorrect be-

---

1. The Family Support Division is an agency of the Missouri Department of Social Services and is responsible for administering the pensions and services for the blind. *Gerken v. Sherman*, 276 S.W.3d 844, 848 (Mo.App. W.D. 2009). The Director was sued in his official capacity only.

2. That provision declares:
 The general assembly shall provide an annual tax of not less than one-half of one cent nor more than three cents on the one hundred dollars valuation of all taxable property to be levied and collected as other taxes, for the purpose of providing a fund to be appropriated and used for the pensioning of the deserving blind as provided by

law. Any balance remaining in the fund after the payment of the pensions may be appropriated for the adequate support of the commission for the blind, and any remaining balance shall be transferred to the distributive public school fund.
Mo. Const. art. III, § 38(b).

3. Because *Gerken v. Sherman*, 276 S.W.3d 844 (Mo.App. W.D.2009) provides a detailed discussion of Pensioners' claims, we provide only an overview here.

4. Our mandate in *Gerken I* was issued on February 4, 2009.

cause, contrary to the relevant statutes and the Missouri constitution, the Division erroneously tied increases in pension payments to growth in the fund's balance (the balance method) rather than growth in the fund's revenue (the revenue method). *Id.* at 852. Consequently, we reversed the trial court's finding that the Division's methodology was correct. *Id.* at 856. We further found that the trial court had erred in finding that the three-year statute of limitations in section 516.130 applied to Pensioners' claims and reversed that determination. *Id.* at 855. We remanded for the circuit court to determine if Pensioners had proven the elements for an accounting, to order an accounting if such was the case, and to "reissue a judgment in accord with [our] opinion concerning those issues." *Id.* at 855–56. We otherwise affirmed the judgment. *Id.* at 856.

On remand, the trial court denied the Division's request to apply a five-year statute of limitations and ordered an accounting. It suggested the appointment of Dr. James LePage as the special master for the accounting. The Division and Pensioners consented to Dr. LePage's appointment, although the Division objected to the need for an accounting. Dr. LePage prepared a report calculating a historic underpayment of $23.6 million, which the Division raised issues with during a hearing on December 17, 2009. Dr. LePage submitted a revised report to the court on March 20, 2010; it calculated the aggregate amount of underpayment to the Pensioners from 1992 to 2009 to be $18,832,188. A hearing was held to receive the report on March 22, 2010.

On March 31, 2010, the trial court adopted Dr. LePage's findings and conclusions as its own accounting and entered an aggregate judgment for $18,832,188 as actual damages "representing the total of the historic underpayment of Blind Pension benefits due Plaintiff Class for the years 1992 through the present."[5] The trial court further found that Pensioners' class was entitled to prejudgment interest in the amount of $11,297,500, pursuant to section 408.020. It ruled that individual pensioners were "entitled to their portion of the unpaid benefits and interest depending on the number of months, and which months, they were underpaid benefits" and ordered the Division to immediately calculate and pay the damages due to each class member. It further awarded twenty-five percent of the common fund, $7,532,422, as attorneys' fees, and ordered the parties to submit either a stipulated claims process or separate proposed claims processes if no stipulation could be reached. It then denominated its findings and orders as a judgment "final for the purposes of appeal under Missouri Rule 74.01(b)." The Division moved to stay judgment pending appeal, which the trial court granted. The Division appeals, raising five points.

### Standard of Review

We review a court-tried case under the standard articulated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Midwest Div.–OPRMC, LLC v. Dep't of Soc. Servs., Div. of Med. Servs.*, 241 S.W.3d 371, 376–77 (Mo.App. W.D.2007). We affirm the trial court's decision unless it lacks substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32. Where the facts before the court are stipulated, our concern is whether the trial court drew the correct legal conclusions from the facts. *Midwest Div.–OPRMC*, 241 S.W.3d at 377. Despite the stipulation, we view all evidence and inferences in favor of the pre-

---

5. The statutory formula for calculating benefits became effective in 1992. § 209.040.4.

vailing party and disregard contrary evidence. *Id.* Questions of law we review *de novo.* *Id.*

### Legal Analysis

#### *Scope of Authority to Consider Five–Year Statute of Limitations*

In its first point, the Division argues the trial court erred in concluding it was without authority to apply the five-year statute of limitations period in section 516.120(2) because of our mandate in *Gerken I.* The Division asserted the five-year limitation within section 516.120 in its answer. However, because the trial court determined the three-year limitations period of section 516.130 applied in *Gerken I*, it did not address the Division's affirmative defense of section 516.120.

In *Gerken I,* we held that the three-year statute of limitations in section 516.130 [6] was not applicable to plaintiff's claim because the "gravamen" of the complaint showed that their suit concerned actions taken by the Division, not the Director in his official capacity. 276 S.W.3d at 854–55. We did not address the applicability of section 516.120, as it was not at issue.

In its judgment in the present case, the trial court determined that it could not consider the Division's continued statute of limitations argument under 516.120(2) because it had jurisdiction only to address the issues in our mandate. The Division argues that because *Gerken I* only addressed the limitations period in section 516.130, the trial court erred in concluding our mandate prohibited it from considering the limitations period in section 516.120(2).

■ The scope of the trial court's authority on remand is defined by our man-

date. *Guidry v. Charter Commc'ns, Inc.,* 308 S.W.3d 765, 768 (Mo.App. E.D.2010). The trial court must render judgment in accord with our mandate and opinion. *Id.* Whether the trial court followed the mandate is a question we review *de novo.* *Id.* A remand may be one of two types: "(1) a general remand, which does not provide specific direction and leaves all issues open to consideration in the new trial; and (2) a remand with directions, which requires the trial court to enter a judgment in conformity with the mandate." *Id.* If the mandate gives express instructions on a specific course of action, the trial court may not diverge from those instructions, or its act is void. *Id.* at 768–69.

■ In *Gerken I,* we instructed the trial court on remand to "determine whether or not the appellants proved the requisite elements for an accounting," and to order an accounting if it determined the elements were shown. *Gerken I,* 276 S.W.3d at 855. An action for an accounting requires the requesting party to show a right to an accounting: the party must show "a need for discovery, complicated accounts, a fiduciary or trust relationship between the parties, and lack of an adequate legal remedy." *Id.* In accord with the remand, the trial court found that Pensioners' need for discovery was demonstrated throughout the action in that thousands of pages of records were in the exclusive possession and control of the Division; determining the underpayment was a "daunting" task; the Division held a position of trust as they were responsible for administering the Blind Pension Fund; and that Pensioners had no remedy absent an accounting for determining the underpayment.

---

**6.** Section 516.130(1) provides a three-year statute of limitations for "An action against a sheriff, coroner or other officer, upon a liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty, including the nonpayment of money collected upon an execution or otherwise[.]"

■ However, if Pensioners' accounting action was barred by the statute of limitations, they necessarily could not show a legal right to an accounting. *See, e.g., Lane v. Non–Teacher Sch. Emp. Ret. Sys. of Mo.*, 174 S.W.3d 626, 633 (Mo.App. W.D. 2005). Further, if the statute of limitations limited Pensioners' damages, this was necessarily integral to the accounting. Consequently, the determination of whether section 516.120 barred or limited Pensioners' action was within the scope of our mandate.[7] The trial court therefore erred in finding it was without authority to address the Division's affirmative defense of the statute of limitations. The Division's first point is granted.

### Applicability of Five–Year Statute of Limitations

■ In its second point, the Division contends the trial court erred by not applying the five-year statute of limitations in section 516.120(2). Section 516.120(2)[8] provides that "[a]n action upon a liability created by a statute other than a penalty or forfeiture" must be brought within five years. Pensioners' suit was filed on February 16, 2006. The Division argues that Pensioners' cause of action accrued monthly, each time a pension payment was made to the Pensioner, and that the five-year statute of limitations precludes damages prior to February 16, 2001.

■ Although the trial court found itself without authority to consider section 516.120(2), it noted parenthetically that the Division had not proven that Pensioners, or any pensioner, had ascertained damages before late 2003, "well in advance of the expiration of any possibly applicable statute of limitations." Section 516.100 provides that the limitations period in section 516.120 "shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs." Consequently, the commission of the wrong and a resulting damage are insufficient to cause the action to accrue. *Gaydos v. Imhoff*, 245 S.W.3d 303, 306–07 (Mo.App. W.D.2008). Rather, the action accrues "when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained." § 516.100. Thus, the statute of limitations is triggered when the damage is both sustained and "capable of ascertainment." *Bettis v. Potosi R–III School Dist.*, 51 S.W.3d 183, 186 (Mo.App. W.D.2001). It is not triggered, as the trial court's judgment implies, when the plaintiff actually ascertains the injury. Rather, Missouri uses a reasonable person standard: a wrong is capable of ascertainment when "a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Powel v. Chaminade College Preparatory, Inc.*, 197 S.W.3d 576, 584–85 (Mo. banc 2006).

Pensioners argue that "no notices explaining the calculation process were provided to the pensioners," "there were no written rules, regulations, or policies explaining the pension calculation method," and the Division's budget books were not

---

7. Pensioners argue that addressing the statute of limitations in section 516.120(2) was barred by the doctrine of the law of the case, which prevents issues that have been determined from being reexamined. *See Lane v. Non–Teacher Sch. Emp. Ret. Sys. of Mo.*, 174 S.W.3d 626, 634 (Mo.App. W.D.2005). The doctrine does not apply as no determination as to the applicability of section 516.120(2) was made in *Gerken I*.

8. Statutory references are to RSMo 2000 and the Cumulative Supplement 2009.

available in Braille, though it was not contended that they requested documents in Braille. The Division contends that the erroneous payments "could have been ascertained at any time, as [Pensioners] had both public information, and their monthly payments." It argues that the Pensioners could have determined the error from the amount of their pension increase (or the lack thereof) and the statute dictating the increase calculation, section 209.040. It further argues that the Division's and the Governor's annual budget requests are public documents, as is the appropriations bill which sets the pension amount.

Subsection 209.040.4 provides that:

"[t]he monthly pension ... shall be increased ... by a monthly pension amount which equals one-twelfth of the quotient obtained by dividing seventy-five percent of the annual growth of funds in the blind pension fund for the preceding fiscal year by the number of persons eligible to receive the monthly pension. . . .

The pension increase is thus determined by a simple formula: (1) dividing seventy-five percent of the annual growth of funds by the number of pensioners to obtain the annual increase; then (2) dividing the annual increase by twelve to obtain the monthly increase.

It was stipulated that the property tax revenues levied and collected to fund the pension fund have increased every year since at least 1994. In fact, the average revenue collected in 2006 was nearly double the amount in 1994. From 1995 to 1998, the property tax revenues levied and collected for the fund increased from $14,033,071 for fiscal year 1995 to $16,765,336 in fiscal year 1998. During this same period, no increases were made to the monthly pension amount, while the average number of pensioners increased only slightly. Ms. Beverly Armstrong, a pensioner and then a member of the Missouri Council for the Blind (MCB), testified that in 2003 she was asked by MCB to investigate how DSS calculated the pension amounts. Ms. Armstrong agreed on cross-examination that the catalyst for the investigation of the Division's methodology was that in 1996, 1997, and 1998 no increases were made to the monthly pension amount. She did not know why MCB waited five years to initiate the inquiry.

The pension payments from 1996–1998 clearly did not correlate with the growth in property tax revenues levied and collected, as mandated by the statute. We find that the fact that the fund's revenues increased substantially, yet no increase in payments were made would have put a reasonable person on notice prior to Pensioners' 2003 investigation.

Further, the fiscal year-end cash balance in the fund grew from $3,140,921 in fiscal year 1994 to $12,998,555 in fiscal year 2006, approximately a four-fold growth in a fund that was required by the Missouri Constitution to be zeroed out every two years. *See Gerken I,* 276 S.W.3d at 852. At oral argument and at trial, when asked why the pension methodology question had been raised in 2003, counsel explained that notice was created because of the increase in the fund's cash balance each year. We find this cash balance, accruing over twelve years, would also have put a reasonable person on notice that the statute was being violated.

For the foregoing reasons, we find that the fact of Pensioners' injury was capable of earlier ascertainment and Pensioners' damages should have been limited by the five-year statute of limitations in section 516.120(2). *See State ex rel. Edwards v. Donovan,* 226 Mo.App. 392, 41 S.W.2d 842, 846–47 (1931) (limiting pensioner's recovery to five years of back payments because of applicable five-year statute of limita-

tions contained in section 516.120's predecessor). The Division's second point is granted. Pensioners' damages are limited to those accruing from February 16, 2001.

### Methodology for Calculating Aggregate Damages

In its third point, the Division raises two additional arguments as to the trial court's aggregate calculation of the damages owed to the class members: (1) it contends the damages were not in accord with section 209.040 in that they were calculated from historic figures rather than the Division's estimates; and (2) it argues that the damages measure does not reflect the correct amounts due to individual pensioners.

#### 1. "Preceding fiscal year" in Subsection 209.040.4

Subsection 209.040.4 requires the pension increase to be made by an appropriations bill and the increase to be calculated using two figures: (1) "the annual growth of funds in the blind pension fund for the preceding fiscal year," and (2) the number of eligible pensioners. The Division argues that the trial court erred in rejecting the use of projections that would have been available to the Division at the time of the appropriations bill in order to ascertain what the required monthly payment should have been each fiscal year. The Division contends the correct increase, and thus the required monthly payment each fiscal year, should have been determined using the estimates available to it for the fiscal year in which the appropriation was made and passed.

Missouri's fiscal year begins July 1 each year. Mo. Const. art. IV, § 23. Fiscal year 2012, for example, begins July 1, 2011. The Missouri Constitution, article III, section 25, "Limitation on introduction of bills," requires that "[n]o appropriation bill shall be taken up for consideration after 6:00 p.m. on the first Friday following the first Monday in May of each year." The Missouri Constitution bars appropriation bills from being considered after the first Friday following the first Monday in May, while the current fiscal year does not end until June 30. As a result, the pension appropriation for the upcoming fiscal year must be determined prior to the end of the current fiscal year. The Division argues that the appropriations bill mandated by the statute necessarily relies on estimated numbers because the actual data for the current fiscal year is not available at the time the appropriation is required to be made.

The Division's argument, however, rests upon an erroneous interpretation of section 209.040. We seek to ascertain the legislature's intent in a statute through the plain and ordinary meaning of the words the legislature chose. *Bd. of Educ. of City of St. Louis v. Daly*, 272 S.W.3d 228, 234 (Mo.App. E.D.2008). If the language is clear and unambiguous, we give effect to the language as written and do not insert superfluous or contrary terms. *Id.* Subsection 209.040.4 directs the increase to be determined using the "annual growth of funds in the blind pension fund *for the preceding fiscal year.*" (Emphasis added). It does not direct the increase to be calculated using annual growth for the *current* fiscal year (i.e. the fiscal year in which the appropriations bill is considered and passed). If the legislature had intended the calculations to use the "annual growth of funds" *for the current fiscal year*, we presume it would have stated so. If the legislature had intended the calculations to use the "annual growth of funds" *over the preceding fiscal year*, we also presume it would have stated so. Moreover, "[w]e interpret statutes in a manner that is consistent with reason." *Gerken I*, 276 S.W.3d at 852. We reject

constructions that "produce an unreasonable, oppressive, or absurd result." *Board of Educ. of City of St. Louis*, 272 S.W.3d at 234 (internal quotation marks and citation omitted). We find it illogical to presuppose either the legislature ignored a conflict with a constitutional deadline when requiring the appropriation, or that it preferred the use of projected numbers rather than actual data.

Consequently, by its plain language, subsection 209.040.4 requires the appropriation to be based on the growth of funds for the year preceding the year in which the appropriation is made and passed. For example, the appropriation made during fiscal year 2002, setting the monthly pension amount due to Pensioners in fiscal year 2003, is calculated using the annual growth in funds for "the preceding fiscal year," which was fiscal year 2001, not 2002. The "annual growth" for 2001 is calculated by subtracting the actual revenue for 2000 from the actual revenue for 2001. We therefore reject the Division's argument that the trial court should have used the Division's projected figures.

### 2. *Average Annual Number of Pensioners*

The Division next argues that the trial court erred in adopting the report's aggregate calculation of the amount of the underpayment to the class each year. It contends that the trial court's calculation of what should have been paid is erroneous in that "the number of persons eligible to receive the monthly pension" was based on an annual average and resulted in an overcalculation of the amount the fund should have paid each fiscal year.

To determine the underpayment, it was necessary to find the difference between what should have been paid to the Pensioners' class, and what actually was paid. To determine what should have been paid,

a "net" required payment was calculated for each fiscal year. To find the net required payment, the report first determined what the monthly pension amount should have been each year pursuant to subsection 209.040.4. The report then multiplied the monthly pension amount by the average annual number of eligible pensioners to find a "total" required payment. The SSI payment was then subtracted to reach the "net" required payment. The net required payment was then compared with the fund's "actual payment" to all Pensioners for that fiscal year, and the difference was determined to be Pensioners' damages.

*Report's Calculation of Underpayment by Year*

Required Monthly Pension
x Average Number Eligible
x 12

Total Required Payment
- SSI Payment

Net Required Payment
- Actual Payment

Underpayment (Damages)

The Division contends it was erroneous to use the average annual number of eligible pensioners to determine the total required payment. It argues that the caseload varies monthly, and that not all eligible pensioners are entitled to a full payment each month because their pension payment may be reduced by the SSI received. *See Gerken I*, 276 S.W.3d at 851. It contends that by using the annual average number of pensioners, and assuming each was entitled to a full payment each month, the total required payment is inflated, and therefore, the aggregate damages are inflated.

We reject the Division's argument. First, we note that the determination of the underpayment took account of the SSI payment each fiscal year, reducing the net required payment each year by that amount. Second, the report indicates that "[d]ata are not available to determine the

exact number of individuals receiving a payment and the exact amount of the SSI payment deducted" and that "[c]aseload data are necessarily average data."

■■■ More importantly, we do not believe, as the Division argues, that the burden was thrust on the trial court to determine an award that "actually calculates the amount of damage that any pensioner suffered for any particular month for any particular year." We do not require damages to be established with absolute certainty: the measure is reasonable certainty. *Shechter v. Brewer*, 344 S.W.2d 784, 791 (Mo.App.1961). In class actions, aggregate proof of damages is proper where liability can reasonably be shown by mathematical computation and "may also be based on sampling techniques or other reasonable estimates." 3 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 10:3 (4th ed.2002). As noted by the United States Supreme Court in distinguishing between the measure of proof necessary to establish *a right of recovery* and the measure of *the amount of* the recovery: if a wrongdoer's damages cannot be shown with absolute certainty, it is sufficient that they are shown by "just and reasonable inference" because "[t]he wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562–63, 51 S.Ct. 248, 75 L.Ed. 544 (1931).

Moreover, although the trial court awarded an aggregate of class damages, it held specifically that individual pensioners were "entitled to their portion of the un-

paid benefits and interest *depending on the number of months, and which months, they were underpaid benefits* and the interest relating to such underpayments." (Emphasis added). It then ordered the Division "to calculate the benefits and interest *owed to each class member* and pay the same to each class member." (Emphasis added). Upon remand, once a claims process is developed and individual pensioners are credited their claims, it can then be ascertained if the aggregate damage award results in a surplus. It would then fall to the court "to make a determination about the distribution of the surplus," such as whether such funds should revert to the pension fund or escheat to the state. *See* NEWBERG ON CLASS ACTIONS § 10:15; *see also* 107 ALR Fed 800, 801 (1992). The Division's third point is denied.

*Prejudgment Interest Award*

In its fourth point, the Division contends the trial court's award of prejudgment interest was erroneous. The trial court awarded Pensioners prejudgment interest, calculated annually, on the pension underpayments dating from 1992 pursuant to section 408.020.[9] The Division first argues that its sovereign immunity bars the recovery of prejudgment interest.

■■■ We do not agree that sovereign immunity barred the trial court's award of prejudgment interest. Section 207.020 defines the powers of the Division of Family Services and grants it the power "[t]o sue and be sued." In analyzing a suit against the State for money had and received, the Missouri Supreme Court explained that in non-tort claims, "[s]tatutory authority to sue and to be sued is sufficient consent to

---

9. Section 408.020 permits the recovery of prejudgment interest for "all moneys after they become due and payable, on written contracts, and on accounts after they become due

and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt."

suit to waive the doctrine of immunity of the sovereign from suit without its consent." *Kubley v. Brooks*, 141 S.W.3d 21, 31 (Mo. banc 2004); *see also Palo v. Stangler*, 943 S.W.2d 683, 685 (Mo.App. E.D. 1997). Further, as noted by Pensioners, we have previously found that the Department of Social Services, of which the Division is a part, to be subject to the payment of prejudgment interest. *See Midwest Division–OPRMC, LLC*, 241 S.W.3d 371, 384 (Mo.App. W.D.2007).

The Division attempts to distinguish *Palo* and *Midwest Division–OPRMC* on the grounds that the actions at issue were contractual in nature and in the instant case, "the obligation is based on a statute, and the statute does not provide for prejudgment interest." The Division's argument, however, does not follow *Kubley*, in which the Missouri Supreme Court distinguished the doctrine that the sovereign is immune from tort liability from the doctrine that the sovereign cannot be sued without its consent. 141 S.W.3d at 28–29. Because in section 207.020 the State consented to suit, the trial court's award of prejudgment interest was not barred by sovereign immunity.

 The Division next argues the trial court erred in awarding prejudgment interest because damages were not liquidated. Damages are liquidated when they are "fixed and determined or readily ascertainable by computation or a recognized standard." *Midwest Division–OPRMC*, 241 S.W.3d at 384 (internal quotation marks and citation omitted). The rationale for this requirement is "the idea that where the person liable does not know the amount he owes he should not be consid-

ered in default because of failure to pay." *Columbia Mut. Ins. Co. v. Long*, 258 S.W.3d 469, 480 (Mo.App. W.D.2008) (internal quotation marks and citation omitted).

The Division argues that because Pensioners did not know the amount due and sought an accounting, this demonstrates that the damages were not liquidated. We do not agree. Dr. LePage's report shows that the damages were readily ascertainable by computation or a recognized standard. In fact, both the Division and Pensioners performed their own calculations to determine the amounts of underpayment. Where the damages can be ascertained through standard accounting measures, the fact that the damages had not yet been calculated is not a cause for denying Pensioners the time-value of the benefits due them. *See id.* Further, the fact that the Division disputes the methodology of the calculation does not make the damages unascertainable.[10] The Division's fourth point is denied, except that on remand, prejudgment interest will need to be recalculated consistent with the trial court's new findings on damages.

*Attorneys' Fees*

 In its fifth point, the Division argues the trial court erred in awarding twenty-five percent of damages as attorneys' fees. As noted, the trial court entered judgment in accord with its accounting, finding that Pensioners as a class were entitled to the amount of the historic underpayment and prejudgment interest on the underpayment, designating this total to be the "common fund" for the class. It then awarded twenty-five percent of the

10. Although the argument portion of the Division's brief makes some reference to a requirement that a plaintiff have made a prejudgment demand for payment in order to recover prejudgment interest, this demand re-

quirement is not referenced in the Division's Point Relied On, and we accordingly do not address the Division's cursory statement on this issue.

common fund to Pensioners' attorneys. The Division argues that the trial court does not have the authority to order it to spend money from the pension fund because it is only permitted to spend money from the pension fund pursuant to an appropriations bill passed by the General Assembly.[11]

■ Missouri follows the American rule, which ordinarily requires litigants to bear their own attorney's fees. *Lett v. City of St. Louis*, 24 S.W.3d 157, 162 (Mo. App. E.D.2000). Exceptions, however, are made where the fees are permitted by statute or contract, "where very unusual circumstances exist so it may be said equity demands a balance of benefits," or where the fees result from an individual being involved in collateral litigation. *Id.*; *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). 'Balancing the benefits' incorporates two doctrines that apportion the costs of the litigation among those benefitting from it:

> First, the common fund doctrine permits a trial court to require non-litigants to contribute their proportionate part of the counsel fees when a litigant successfully creates, increases, or preserves a fund in which the non-litigants were entitled to share. Second, the common benefit doctrine permits recovery of attorney's fees when a successful litigant benefits a group of other individuals similarly situated.

*Lett*, 24 S.W.3d at 162 (internal citations omitted). Under this equitable theory, the attorney's fees are shared between the litigants benefitting from the suit. Consequently, the Division was not ordered to spend money from the pension fund. Pensioners were ordered to share in the costs of bringing suit with the result being a *pro rata* deduction of their damage awards. The attorney fees should be revisited on remand after the recalculation of damages. *See Knopke v. Knopke*, 837 S.W.2d 907, 922 (Mo.App. W.D.1992) (finding where attorneys' fees were based on the amount of the judgment and the amount was substantially reduced on appeal, "the attorneys fee award must be reduced as the amount of the judgment is reduced, although not necessarily ratably"). The Division's challenge to the attorney's fees award is otherwise denied.

## Conclusion

For the foregoing reasons, we affirm the trial court's judgment in part, reverse in part, and remand for further proceedings consistent with this opinion.

PFEIFFER, P.J., and AHUJA, J., concur.

---

11. The Division cites Mo. Const. art.III, § 36, art. IV, §§ 23 and 28.