

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-15-00264-CR

MISAEL D. PORTILLOCOREAS                                   APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

### FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
### TRIAL COURT NO. 1383491D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury found Appellant Misael D. Portillocoreas guilty of the offense of possession of a controlled substance of more than 400 grams of methamphetamine. *See* Tex. Health & Safety Code Ann. § 481.115(f) (West 2010). The jury assessed Appellant's punishment at ten years' confinement, and

---

[1]*See* Tex. R. App. P. 47.4.

the trial court sentenced him accordingly. Appellant perfected this appeal raising a single issue challenging the sufficiency of the evidence to establish his possession of the methamphetamine. We will affirm.

## II. FACTUAL BACKGROUND

Jose Ramon Vazquez Ramirez[2] testified that in 2014, he came to Arlington, Texas, from Mexico at the invitation and insistence of "Chinco" to start cooking drugs. He came and began "cooking" methamphetamine at a house located at 1002 Ruby Street in Arlington. He and Appellant and Oscar Prito-Cardoza lived together at a different house on Center Street in Arlington. Appellant would help Jose cook the drugs at the Ruby Street house by using mustard-type plastic bottles to squirt acetone over the cooked methamphetamine to clean it. Oscar would sell the methamphetamine. Jose testified that the group kept the money obtained from the sale of the drugs in a safety box at apartment 2109 on Little Brook Street.

Corporal Michael Wheatley with the Arlington Police Department testified that on August 28, 2014, he executed a search warrant at 1002 Ruby Street. He testified that after police entered the home on Ruby Street, he found Appellant hiding between the oven (which had been disconnected from the wall) and a

---

[2]Jose pleaded guilty to the offense of possession of methamphetamine, was sentenced to ten years' confinement, resided in prison at the time of Appellant's trial, and testified that he understood his testimony "does nothing" to his sentence.

countertop that it was pushed up against. Appellant, Oscar, and Jose were present in the Ruby Street house and were arrested.

Special Agent Joseph Patti with the Drug Enforcement Agency testified that on July 8, 2014, the DEA conducted a consent search of a house in Arlington and found drugs. From the occupant of that home, they learned that narcotics drug trafficking was occurring at another house in Arlington located at 923 Center Street. Surveillance of the Center Street house established that Oscar, Jose, and Appellant lived at the house. Surveillance further established that on August 28, 2014, Oscar and Appellant left the Center Street home, drove to a business called Novamex on the Dallas/Mesquite border, received a package from a known drug trafficker, and then drove to the Ruby Street home. Oscar, Jose, and Appellant were then observed leaving the Ruby Street house; they drove to the apartments at Little Brook and entered apartment 2109. They exited the apartment carrying a white plastic bag, which they then delivered to persons waiting in a silver Infinity behind a restaurant. During a traffic stop of the Infinity, police recovered over $27,000 from the white plastic bag. Oscar, Jose, and Appellant drove to Home Depot, and agents observed them purchasing acetone. Based on the evidence gathered during the surveillance, the DEA obtained search warrants for the Little Brook apartment[3] and the Ruby Street house. When the warrant was being executed at the house on Ruby Street, one

---

[3]At the Little Brook apartment, authorities found drug ledgers and cash.

DEA agent testified that when he was on the front porch, he could smell the odor caused by methamphetamine cooking emanating from the home.

The trial court admitted into evidence seventy-three pictures marked as State's Exhibits. All seventy-three photographs were of the Ruby Street house on the day of Appellant's arrest at that location. The photos showed that the house was practically empty—only two pieces of furniture are pictured, except for the drug-cooking paraphernalia; Officer Wheatley testified that he recalled seeing no furniture in the home except one chair. Numerous large thermoses are shown stored under a sink, in cabinets, in drawers, and in various positions on the floor. Jose testified that the thermoses are used in cooking methamphetamine to let the liquid meth cool, and liquid meth was inside some of the thermoses. Several plastic strainers were in plain view on a counter in the laundry room; they contained large pieces of cooked methamphetamine. Jose testified that after the methamphetamine was cleaned and sat in the strainer long enough, he would package it for sale. Two digital scales and several large Ziplock bags that each contained a kilo of methamphetamine were found in the oven in the kitchen; in total, 11,255 grams of methamphetamine, including adulterants and dilutants, were seized from the Ruby Street house. State's Exhibits 25, 26, and 27 picture at least three gallons of acetone sitting on the floor. A large bucket of liquid methamphetamine was in plain view in the utility room of the home.

Oscar testified that he had been charged with possession of 400 or more grams of methamphetamine and that he was guilty of that offense. He testified

that on August 28, 2014, prior to his arrest at the Ruby Street house, he and Appellant drove to Dallas to meet with a trucker. They paid the trucker $54,000, and the trucker gave them the bags of methamphetamine subsequently found at the Ruby Street house.

Appellant testified that he knew nothing of Oscar and Jose's drug ring and that the only way he was involved with them is that he had lived with them for two or three weeks before his arrest. Appellant said that he was at the Ruby Street house to change window blinds and to change the locks on the house. He agreed that he went with Oscar on the morning of August 28, 2014, to pick up something in Dallas but denied knowing what it was. He testified that they went to Home Depot to buy the materials needed to change the blinds and the locks and said that he stayed at Home Depot to get the blinds cut to the correct size while Oscar and Jose left for a while. He said that Oscar and Jose made another trip to Home Depot to get different blinds while he worked on the door locks. Appellant denied seeing or smelling any drugs in the Ruby Street house.

### III. STANDARD OF REVIEW

In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2789 (1979); *Lucio v. State*, 351 S.W.3d

5

878, 894 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 2712 (2012); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13.

## IV. THE LAW CONCERNING LINKS

To prove unlawful possession of any controlled substance, "the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* Tex. Health & Safety Code Ann. § 481.002(38) (West Supp. 2015) ("'Possession' means actual care, custody, control, or management."). Possession is not required to be exclusive. *See Evans*, 202 S.W.3d at 162 n.12. When the defendant is not in exclusive possession of the place where the controlled substance is found, then additional, independent facts and circumstances must affirmatively link the defendant to the substance in such a way that it can reasonably be concluded that the defendant possessed the substance and had knowledge of it. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005).

6

Several factors may help to establish a link between the defendant and the contraband, including (1) the defendant's presence when a search is conducted, (2) whether the substance was in plain view, (3) the defendant's proximity to and the accessibility of the substance, (4) whether the defendant was under the influence of narcotics when arrested, (5) whether the defendant possessed other contraband or narcotics when arrested, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether the defendant owned or had the right to possess the place where the substance was found, (12) whether the place where the substance was found was enclosed, (13) whether the defendant was found with a large amount of cash, and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12.

Not all of these factors must be proved; rather, it is the cumulative logical force the factors have in proving possession that we must consider. *See Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976); *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). Additionally, the absence of some of the factors is not evidence of innocence that must be weighed against the factors that are present. *Hernandez*, 538 S.W.2d at 131. Rather, the factors are used to assess the sufficiency of the evidence linking the defendant to the knowing possession of contraband. *See, e.g.,*

7

*Roberson v. State*, 80 S.W.3d 730, 735–36 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

Finally, links are not requisite elements of the offense of possession of a controlled substance. *See, e.g.*, Tex. Health & Safety Code Ann. § 481.002(38) (defining possession), *id.* § 481.115(a) (providing that person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1). Instead, links are utilized by a reviewing court to assist in the court's sufficiency analysis of the evidence establishing possession; what was formerly known as the "affirmative links rule" is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. *See Poindexter*, 153 S.W.3d at 406.

## V. ANALYSIS

The State points to the following evidence, when viewed in the light most favorable to the jury's verdict, as sufficiently linking Appellant to the methamphetamine found at the Ruby Street house:

• The surveillance team witnessed a drug transaction between Oscar, Appellant, and a known drug trafficker.

• The surveillance team witnessed Appellant and his co-defendants come and go from the Little Brook apartment.

• Drug ledgers and cash were found at the Little Brook apartment.

• The surveillance team witnessed Appellant and his co-defendants deliver a white bag that appeared to contain a box to a silver Infinity.

• A white bag containing a box filled with $27,000 was seized from the silver Infinity.

• The surveillance team witnessed Appellant and his co-defendants buying acetone.

• Acetone was being used to process methamphetamine in the Ruby Street house (presence of paraphernalia).

• Appellant and his co-defendants had been at the Ruby Street house for three to four hours before the search team arrived; nobody entered or exited the house during that time.

• The Ruby Street house had a strong odor of methamphetamine processing that a search team member testified he could smell from the porch before the team entered the house (odor of contraband).

• The search team found tools and ingredients used to process methamphetamine throughout the house (proximity and accessibility, paraphernalia, plain view, enclosed space).

• Appellant hid from the search team (presence, consciousness of guilt).

• The search team seized 11,255 grams of methamphetamine, including adulterants and dilutants, from throughout the Ruby Street house (proximity and accessibility, paraphernalia, plain view, enclosed space).

The cumulative logical force of this evidence—as well as Jose's testimony that Appellant had cleaned the methamphetamine with acetone; Oscar's testimony that Appellant had accompanied him to Dallas to purchase $54,000 of methamphetamine; and evidence of the seizure of 11,255 grams of what Oscar testified was the just-purchased methamphetamine from the Ruby Street house—is sufficient to have enabled a rational factfinder to have found beyond a reasonable doubt the essential element of possession by Appellant of more than

400 grams of methamphetamine. *See Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2789.

Specifically addressing the factors linking Appellant to the methamphetamine—Appellant was present when the search was conducted; thermoses of liquid methamphetamine, a bucket of liquid methamphetamine, pieces of hardened methamphetamine in strainers, and gallon containers of acetone were all in plain view in various rooms of the home; there was other drug paraphernalia present in the home; Appellant was found hiding behind an oven where multiple kilos of methamphetamine were stored; there was an odor from cooking methamphetamine emanating from the house; and through surveillance, Appellant was observed with Jose and Oscar retrieving $27,000 from the Little Brook apartment and delivering it to someone driving a silver Infinity. Given the totality of the evidence and the reasonable inferences from it, the jury here could have rationally determined beyond a reasonable doubt that Appellant exercised actual care, custody, control, or management over more than 400 grams of methamphetamine located in the Ruby Street house and that Appellant knew the matter possessed was contraband. *See* Tex. Health & Safety Code Ann. § 481.002(38) (defining possession as actual care, custody, control, or management); *Evans*, 202 S.W.3d at 161; *see also, e.g.*, *Wilson v. State*, No. 02-10-00439-CR, 2012 WL 662339, at *3–5 (Tex. App.—Fort Worth 2012, no pet.) (mem. op., not designated for publication) (holding evidence sufficient to establish possession element of offense of possession on anhydrous ammonia

with intent to manufacture methamphetamine when chemical was located in shed outside of house that appellant shared with another); *Satchell v. State*, 321 S.W.3d 127, 133–36 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (holding evidence sufficient to establish possession of PCP when appellant admitted that she knew person was dealing drugs and allowed them to move into her apartment).  From this evidence, the jury could have reasonably inferred that Appellant was not merely an innocent bystander whose sole connection with the methamphetamine in the Ruby Street house was fortuitous proximity.  *See Poindexter*, 153 S.W.3d at 406.  Because the evidence viewed in the light most favorable to the jury's verdict is sufficient to support the possession element of the offense beyond a reasonable doubt, we overrule Appellant's sole issue.

## VI. CONCLUSION

Having overruled Appellant's sole issue, we affirm the judgment of the trial court.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 25, 2016